## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br>U.S. Department of Justice<br>Antitrust Division<br>325 7th Street, NW, Suite 500<br>Washington, D.C. 20530<br><br>*Plaintiff,*<br><br>v.<br><br>CAL DIVE INTERNATIONAL, INC.<br>400 N. Sam Houston Parkway E, Suite 400<br>Houston, Texas 77060,<br><br>STOLT OFFSHORE S.A.<br>Dolphin House, Windmill Road<br>Sunbury-on-Thames<br>Middlesex, TW 16 THT, England,<br><br>STOLT OFFSHORE, INC.<br>10787 Clay Road<br>Houston, Texas 77041,<br><br>and<br><br>S&H DIVING, LLC<br>10787 Clay Road<br>Houston, Texas 77041<br><br>*Defendants.* | CIVIL CASE NO.:<br>JUDGE:<br>DECK TYPE: Antitrust<br>DATE STAMP: |

### COMPLAINT

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil action to enjoin permanently the proposed acquisition by Cal Dive International, Inc. ("Cal Dive") of certain assets of Stolt Offshore, Inc. and S&H Diving, LLC

(hereinafter collectively "Stolt"), and complains and alleges as follows:

1.      On or about April 11, 2005, Cal Dive entered into an agreement to purchase certain assets from Stolt, including a number of diving support vessels, saturation diving systems, and other assets used by Stolt to compete in the provision of saturation diving services in the United States Gulf of Mexico.

2.      Cal Dive and Stolt are two of only three major providers of saturation diving services to offshore pipeline construction companies and to owners and operators of pipelines, platforms and other offshore structures located in the United States Gulf of Mexico.  As two of the largest providers of these services, Cal Dive and Stolt regularly compete directly for saturation diving projects.

3.      Cal Dive's acquisition of Stolt's saturation diving assets would eliminate Stolt as a competitor for the provision of saturation diving services in the United States Gulf of Mexico.  As a result, purchasers of these services likely will face higher prices and reduced service.  The proposed transaction would substantially reduce competition among providers of saturation diving services in the United States Gulf of Mexico, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18.

## I.

## JURISDICTION AND VENUE

4.      This complaint is filed by the United States under Section 15 of the Clayton Act, as amended, 15 U.S.C. § 25, to prevent and restrain the defendants from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

5.      The defendants are engaged in interstate commerce and in activities substantially

affecting interstate commerce. Cal Dive and Stolt provide saturation diving services, pipelay services, and other support services to customers located in multiple states in and around the United States Gulf of Mexico. The defendants' sales of saturation diving services in the United States represent a regular, continuous and substantial flow of interstate commerce, and have had a substantial effect upon interstate commerce.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337 and Sections 15 of the Clayton Act, 15 U.S.C. § 25.

7. The defendants have consented to personal jurisdiction and venue in this judicial district.

## II.

## THE DEFENDANTS AND THE TRANSACTION

8. Cal Dive International, Inc. is a corporation organized and existing under the laws of the state of Minnesota. Its corporate headquarters are located in Houston, Texas, and its primary subsea and marine services operations are located in Morgan City, Louisiana. Cal Dive provides a full range of marine contracting services in both shallow and deep water. Cal Dive employs more than 300 full-time supervisors, divers, tenders and support staff, making it the largest provider of diving services in the United States Gulf of Mexico. Cal Dive's total revenues in 2004 exceeded $540 million, including more than $45 million for saturation diving services in the United States Gulf of Mexico.

9. Stolt Offshore, Inc., with headquarters in Houston, Texas, is a corporation organized and existing under the laws of the state of Louisiana. S&H Diving, LLC, is a Louisiana limited liability company, with offices in Houston, Texas. Stolt Offshore S.A., the ultimate parent of both Stolt Offshore, Inc. and S&H Diving, LLC, is a major international marine contractor

3

registered in Luxembourg, with 2004 revenues in excess of $1.2 billion worldwide. In the United States Gulf of Mexico, Stolt offers construction and installation engineering services for conventional pipelines, subsea tiebacks, heavy lift salvage, and subsea inspection, maintenance and repair services. Stolt is one of the largest providers of saturation diving services in the United States Gulf of Mexico. In 2004, Stolt had revenues in excess of $30 million from saturation diving services in the United States Gulf of Mexico.

10.    On or about April 11, 2005, Cal Dive and Stolt entered into an Asset Purchase Agreement, pursuant to which Cal Dive agreed to purchase, and Stolt agreed to sell, certain assets for a purchase price of $125 million dollars. Pursuant to the Asset Purchase Agreement, Cal Dive would acquire, among other assets, all of the saturation diving systems, vessels and related equipment currently used by Stolt to provide saturation diving services in the United States Gulf of Mexico.

### III.

### TRADE AND COMMERCE

A.    *Background*

11.    Much of the world's oil and gas reserves are located in offshore areas, including in the United States Gulf of Mexico. Marine contractors design, engineer, fabricate, and install offshore drilling and production rigs, platforms and other structures, which are used to extract crude oil and natural gas from commercially significant subsea reservoirs. Marine contractors, using pipelay vessels, also install undersea pipelines that transport crude oil, natural gas, and other natural resources from production sites to other sites offshore and onshore.

12.    Human divers perform a wide variety of services for marine contractors as well as the

owners and operators of offshore pipelines, platforms and other structures. Divers are used in subsea construction projects, for inspection, maintenance and repair services, and for recovery and salvage after structures are damaged by weather or accident. Divers can perform these services either by surface diving or saturation diving.

13. Surface divers can perform diving services only in relatively shallow depths. Following each dive, surface divers must undertake time-consuming decompression procedures to allow their bodies to adjust to the lower pressure that exists at the surface.

14. Saturation diving systems permit divers to work for prolonged periods and at much greater depths, without undergoing decompression after each dive. During saturation diving operations, divers live for as long as several weeks in airtight chambers aboard diving vessels. The pressure in those chambers is maintained at a level that is equivalent to the pressure at the subsea work site. Saturation diving systems are typically rated to depths of between 600 and 1,000 feet of sea water. A saturation diving system typically consists of one or more saturation chambers, one or more diving bells, and related safety, monitoring and life support systems and equipment. Saturation diving systems can be permanently installed on a vessel, or they can be portable, which allows them to be transported from one vessel to another.

15. A vessel must maintain a fixed position while a saturation dive is in progress. This can be accomplished either by anchor-and-chain mooring systems or through dynamic positioning. Some saturation diving projects require dynamically-positioned vessels because of harsh weather, environmental concerns, water depth, or pipeline congestion on the sea floor.

B.   *Relevant Product Market*

16. The relevant product market affected by this transaction is "saturation diving services," the

provision of human diving services utilizing saturation diving systems, diving support vessels and other assets. Providers and customers of saturation diving services analyze the specific characteristics of a saturation diving project to determine which resources, such as dynamically positioned vessels or saturation chambers of a particular size, are required or are most economical for completing the project. Saturation diving service providers often bid against one another for projects, and are relatively more constrained in the prices they can charge for a particular project by competitors who have comparably more suitable resources available for completing that project.

17.  For projects that utilize divers at substantial depths or for extended periods, surface diving is not a safe or cost-effective substitute for saturation diving services. Other underwater technologies, such as remotely operated vehicles or atmospheric diving suits, have significant practical, technical and cost limitations. It is thus unlikely that a sufficient number of customers would switch away from saturation diving services to make a small but significant nontransitory increase in the price of those services unprofitable.

18.  Saturation diving services is a relevant antitrust product market and a line of commerce within the meaning of Section 7 of the Clayton Act.

C.  *Relevant Geographic Market*

19.  Cal Dive and Stolt compete with each other for the provision of saturation diving services in the United States Gulf of Mexico. In the event of an increase in the price of saturation diving services in the United States Gulf of Mexico, it is unlikely that a sufficient number of other providers of saturation diving services operating outside of the United States Gulf of Mexico would bid their services in this market such that a price increase would be unprofitable.

20. The United States Gulf of Mexico is a relevant geographic antitrust market and a section of the country within the meaning of Section 7 of the Clayton Act.

## IV.

## ANTICOMPETITIVE EFFECTS

A.  *Market Concentration*

21. The relevant market is highly concentrated and would become significantly more concentrated as a result of the proposed transaction. An appropriate measure of concentration in the market for saturation diving services is capacity, calculated on the basis of the number of saturation diving systems used by each competitor in the relevant geographic market. Prior to the transaction, Cal Dive accounts for more than 30%, and Stolt for approximately 20%, of all saturation diving systems competing in the United States Gulf of Mexico.

22. The transaction would increase substantially the concentration in the market for saturation diving services in the United States Gulf of Mexico. The number of significant competitors in that market would be reduced from three to two. As measured by the Herfindahl-Hirschman Index ("HHI"), which is commonly employed in merger analysis and is defined and explained in Appendix A to this Complaint, the proposed transaction would increase the HHI by more than 1100, resulting in a post-merger HHI of approximately 3000.

B.  *Loss of Competition*

23. The proposed transaction is likely to substantially reduce competition in the market for saturation diving services in the United States Gulf of Mexico. The transaction would combine the saturation diving assets of two of the largest providers of saturation diving services in the United States Gulf of Mexico, giving Cal Dive more than half of the capacity in the market.

24.   Customers for saturation diving services in the United States Gulf of Mexico have benefitted from competition between Cal Dive and Stolt.  Cal Dive and Stolt each possess similar types of saturation diving systems and vessels that provide the two companies the ability to effectively bid against each other for a wide variety of saturation diving jobs, including those that call for either dynamically positioned vessels or vessels with anchor-and-chain mooring systems. Many customers consider Cal Dive and Stolt to be the most attractive competitors in the market for saturation diving services in the United States Gulf of Mexico because of their size, vessels, experience, and reputation for safety.  The two companies often directly compete against one another for particular projects, bidding similar combinations of resources.  This direct and close competition has resulted in lower prices and higher quality in saturation diving services than would otherwise have existed.

25.   If Cal Dive's proposed acquisition of Stolt's saturation diving assets is consummated, the competition between Cal Dive and Stolt will be eliminated, and the market for saturation diving services in the United States Gulf of Mexico will become substantially more concentrated.  This loss of competition increases the likelihood of unilateral action by Cal Dive to increase prices and diminish the quality or quantity of services, or of coordinated action by the remaining players in the market to achieve the same ends.

C.    *Entry and Expansion*

26.   Entry by a new saturation diving services provider or expansion by an existing fringe competitor would be difficult, time consuming and expensive.  It would require obtaining saturation diving systems, suitable vessels and related equipment and the divers and other personnel necessary to provide saturation diving services.  It also would require establishing the

operational experience and reputation for safety demanded by customers in the market. Redeployment of saturation diving assets from outside the United States Gulf of Mexico is unlikely to constrain a price increase in the relevant market. Therefore, new entry or expansion would not be timely, likely, or sufficient to thwart the competitive harm of the acquisition.

## V.

## VIOLATIONS ALLEGED

27. The effect of Cal Dive's proposed acquisition of the saturation diving support assets of Stolt, if it were consummated, may be substantially to lessen competition in the provision of saturation diving services in interstate trade and commerce in the United States Gulf of Mexico, in violation of Section 7 of the Clayton Act, 15 U.S.C. § 18. Unless restrained, the transaction will likely have the following effects, among others:

   a. actual and potential competition between Cal Dive and Stolt in the provision of saturation diving services would be eliminated;

   b. competition generally in the provision of saturation diving services would be eliminated or substantially lessened;

   c. prices of saturation diving services would increase; and

   d. quality and service levels in the provision of saturation diving services would decrease.

## REQUEST FOR RELIEF

The United States requests that:

1. the proposed transaction be adjudged to violate Section 7 of the Clayton Act;

2. the defendants be permanently enjoined from carrying out the Asset Purchase Agreement dated April 11, 2005, or from entering into or carrying out any agreement, understanding, or plan, the effect of which would be to allow Cal Dive to merge with or acquire any of the saturation diving equipment, saturation diving vessels, or other saturation diving assets of Stolt;

3. the United States be awarded costs of this action;

4. the United States have such other relief as the Court may deem just and proper.

Dated: October 18, 2005.                                         Respectfully submitted,

FOR PLAINTIFF UNITED STATES

_____                                  _____
Thomas O. Barnett                                                Jennifer L. Cihon  (OH Bar #0068404)
Acting Assistant Attorney General                                Angela L. Hughes (DC Bar #303420)
                                                                 John M. Snyder (DC Bar #456921)
_____                                  Bethany K. Hipp (GA Bar #141678)
J. Bruce McDonald                                                Trial Attorneys
Deputy Assistant Attorney General                                U.S Department of Justice
                                                                 Antitrust Division
_____                                  325 7th St., N.W., Suite 500
Dorothy B. Fountain                                              Washington, D.C.  20530
Deputy Director of Operations                                    Telephone: 202/307-3278

_____
Donna N. Kooperstein
Chief, Transportation, Energy, and
Agriculture Section

_____
William H. Stallings
Assistant Chief, Transportation, Energy, and
Agriculture Section

APPENDIX A
DEFINITION OF "HHI"

The term "HHI" means the Herfindahl-Hirschman Index, a commonly accepted measure of market concentration. The HHI is calculated by squaring the market share of each firm competing in the market and then summing the resulting numbers. For example, for a market consisting of four firms with shares of 30, 30, 20, and 20 percent, the HHI is 2,600 ($30^2 + 30^2 + 20^2 + 20^2 = 2,600$). The HHI takes into account the relative size and distribution of the firms in a market. It approaches zero when a market is occupied by a large number of firms of relatively equal size and reaches its maximum of 10,000 when a market is controlled by a single firm. The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.

Markets in which the HHI is between 1000 and 1800 are considered to be moderately concentrated, and markets in which the HHI is in excess of 1800 points are considered to be highly concentrated. Transactions that increase the HHI by more than 100 points in highly concentrated markets presumptively raise significant antitrust concerns under the Department of Justice and Federal Trade Commission 1992 Horizontal Merger Guidelines.

## CERTIFICATE OF SERVICE

I hereby certify that on October 18, 2005, I caused a copy of the foregoing Complaint, proposed Final Judgment, Hold Separate Stipulation and Order and Plaintiff United States' Explanation of Consent Decree Procedures to be served on counsel for defendants in this matter in the manner set forth below:

By electronic mail and hand delivery:

Counsel for Defendant Cal Dive International, Inc.
Daniel L. Wellington (D.C. Bar #273839)
Neely B. Agin (D.C. Bar #456005)
Fulbright & Jaworski LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2623
Tel: (202) 662-4574
Fax: (202) 662-4643

Counsel for Defendants Stolt Offshore S.A., Stolt Offshore, Inc.
and S&H Diving LLC
Paul C. Cuomo (D.C. Bar #457793)
Sean F. Boland (D.C. Bar #249318)
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, D.C. 20004-2402
Tel: (202) 783-0800
Fax: (202) 383-6610

Jennifer L. Cihon (OH Bar #0068404)
Department of Justice
Antitrust Division
325 Seventh Street, N.W.
Suite 500
Washington, DC 20530
(202) 307-3278
(202) 616-2441 (Fax)