## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff,* ) | Case No. 1:05CV02041 |
| ) | Judge: Emmet G. Sullivan |
| v. ) | Deck Type: Antitrust |
| ) | Filed: January 6, 2006 |
| CAL DIVE INTERNATIONAL, INC., ) | |
| STOLT OFFSHORE S.A., ) | |
| STOLT OFFSHORE, INC., and ) | |
| S&H DIVING, LLC, ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

## UNITED STATES' CERTIFICATE OF COMPLIANCE WITH PROVISIONS OF THE ANTITRUST PROCEDURES AND PENALTIES ACT

The United States hereby certifies that it has complied with the provisions of the Antitrust

Procedures and Penalties Act, 15 U.S.C. § 16(b)-(h) ("APPA"), and states:

1. The Complaint, proposed Final Judgment and proposed Hold Separate Stipulation and

   Order were filed with this Court on October 18, 2005.

2. The Competitive Impact Statement was filed with this Court on October 20, 2005.

3. The Amended Proposed Final Judgment was filed with this Court on October 27, 2005.

4. Pursuant to 15 U.S.C. § 16(b), the proposed Final Judgment and the Competitive Impact

   Statement were published in the Federal Register on October 31, 2005 (70 Fed. Reg.

   62330). A copy of the Federal Register notice is attached as Exhibit A.

5. Pursuant to 15 U.S.C. § 16(c), a summary of the terms of the proposed Final Judgment and

Competitive Impact Statement were published on seven (7) consecutive days running from October 24, 2005 through October 30, 2005 in The Washington Post, a newspaper of general circulation in the District of Columbia. A copy of the certificate of publication from The Washington Post is attached as Exhibit B.

6.   The 60-day comment period specified in 15 U.S.C. § 16(b) commenced on  November 1, 2005, and terminated on December 30, 2005.

7.   During the 60-day comment period, the United States received no comments from members of the public concerning the Amended Proposed Final Judgment.

8.   Pursuant to 15 U.S.C. § 16(b), the United States furnished copies of the Amended Proposed Final Judgment and Competitive Impact Statement to anyone requesting them.

9.   On November 16, 2005, the defendant Cal Dive International complied with the requirement of 15 U.S.C. § 16(g) when it filed with the Court a statement indicating that it had not had any communications concerning the Amended Proposed Final Judgment that were reportable under 15 U.S.C. § 16(g).

10.  On November 18, 2005, defendants Stolt Offshore, S.A., Stolt Offshore, Inc. and S&H Diving LLC complied with the requirement of 15 U.S.C. § 16(g) when they filed with the Court a statement indicating that they had not had any communications concerning the Amended Proposed Final Judgment that were reportable under 15 U.S.C. § 16(g).

11.  With these steps having been taken, the parties have satisfied their obligations under the APPA. Pursuant to 15 U.S.C. § 16(e) and to the proposed Hold Separate Stipulation and Order, which was filed on October 18, 2005 and was entered by the Court on October 27,

2005, the Court may now enter the Amended Proposed Final Judgment without further

hearings, if it determines that entry of the Amended Proposed Final Judgment is in the

public interest. For the reasons set forth in the Competitive Impact Statement, which is

referenced in Section XV of the Amended Proposed Final Judgment, the United States

believes that the proposed Amended Final Judgment satisfies the public interest standard of

15 U.S.C. § 16(e). The United States therefore requests that this Court enter the Amended

Final Judgment without further hearings.

Dated:  January 6, 2006

Respectfully submitted,

Jennifer L. Cihon (OH Bar # 0068404)
Department of Justice, Antitrust Division
325 Seventh Street, N.W., Suite 500
Washington, DC  20530
(202) 307-3278
(202) 616-2441 (Fax)

# **EXHIBIT A**

# DEPARTMENT OF JUSTICE

## Office of Community Oriented Policing Services

### Agency Information Collection Activities: Extension of Currently Approved Collection; Comments Requested

**ACTION:** 60-Day Notice of Information Collection Under Review: Methamphetamine Project Status Update Report (SUR).

The Department of Justice (DOJ) Office of Community Oriented Policing Services (COPS) has submitted the following information collection request to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995. The proposed information collection is published to obtain comments from the public and affected agencies.

The purpose of this notice is to allow for 60 days for public comment until December 30, 2005. This process is conducted in accordance with 5 CFR 1320.10.

If you have comments especially on the estimated public burden or associated response time, suggestions, or need a copy of the proposed information collection instrument with instructions or additional information, please contact Rebekah Dorr, Office of Community Oriented Policing Services, 1100 Vermont Avenue, NW., Washington, DC 20530.

Written comments and suggestions from the public and affected agencies concerning the proposed collection of information are encouraged. Your comments should address one or more of the following four points:

• Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including whether the information will have practical utility;

• Evaluate the accuracy of the agency's estimate of the burden of the proposed collection of information, including the validity of the methodology and assumptions used;

• Enhance the quality, utility, and clarity of the information to be collected; and

• Minimize the burden of the collection of information on those who are to respond, including through the use of appropriate automated, electronic, mechanical, or other technological collection techniques or other forms of information technology, e.g., permitting electronic submission of responses.

## Overview of This Information Collection

(1) *Type of Information Collection:* Extension of a Currently Approved Collection.

(2) *Title of the Form/Collection:* Methamphetamine Project Status Update Report (SUR).

(3) *Agency form number if any and the applicable component of the Department of Justice sponsoring the collection:* Form Number: None. U.S. Department of Justice, Office of Community Oriented Policing Services (COPS).

(4) *Affected public who will be asked or required to respond, as well as a brief abstract:* Primary: Law Enforcement Agencies or Government entities that are recipients of COPS Methamphetamine grants. Other: Universities and Private Non-Profit Agencies. Abstract: The information collected will be used by the COPS Office to determine grantee's progress toward grant implementation and for compliance monitoring efforts.

(5) *An estimate of the total number of respondents and the amount of time estimated for an average respondent to respond:* There will be an estimated 100 annual responses from grantees. The estimated amount of time required for the average respondent to respond is: 3.0 hours.

(6) *An estimate of the total public burden (in hours) associated with the collection:* 325 hours annually.

If additional information is required contact: Brenda Dyer, Department Clearance Officer, United States Department of Justice, Justice Management Division, Policy and Planning Staff, Patrick Henry Building, Suite 1600, 601 D Street, NW., Washington, DC 20530.

Dated: October 25, 2005.

**Brenda Dyer,**
*Department Clearance Officer, United States Department of Justice.*
[FR Doc. 05–21633 Filed 10–28–05; 8:45 am]
**BILLING CODE 4410-AT-P**

# DEPARTMENT OF JUSTICE

## Antitrust Division

### United States v, Cal Dive International, Inc. et al.; Proposed Final Judgment and Competitive Impact Statement

Notice is hereby given pursuant to the Antitrust Procedures and Penalties Act, 15 U.S.C. 16(b)–(h), that a proposed Final Judgment, Hold Separate Stipulation and Order, and Competitive Impact Statement have been filed with the United States District Court for the

District of Columbia in *United States of America v. Cal Dive International, Inc. et al.*, Civil Action No. 1:05CV02041. On October 18, 2005, the United States filed a Complaint alleging that the proposed acquisition by Cal Dive International, Inc. of certain saturation diving assets of Stolt Offshore, Inc. and S&H Diving, LLC would violate Section 7 of the Clayton Act, 15 U.S.C. 18. The Complaint alleges that the acquisition would substantially reduce competition in the market for saturation diving services in the United States Gulf of Mexico. The proposed Final Judgment requires Cal Dive to divest two vessels and a separate saturation diving system.

Copies of the Complaint, proposed Final Judgment, Hold Separate Stipulation and Order, and Competitive Impact Statement are available for inspection at the Department of Justice, Antitrust Division, Antitrust Documents Group, Room 215, 325 7th Street, NW., Washington, DC 20530 (telephone: 202–514–2481), on the Department of Justice's Web site at *http://www.usdoj.gov/atr*, and at the Office of the Clerk of the United States District Court for the District of Columbia. Copies of these materials may be obtained from the Antitrust Division upon request and payment of the copying fee set by Department of Justice regulations.

Public comments is invited within 60 days of the date of this notice. Such comments, and responses thereto, will be published in the Federal Register and filed with the Court. Comments should be directed to Donna N. Kooperstein, Chief, Transportation, Energy & Agriculture Section, Antitrust Division, Department of Justice, 325 7th Street, NW., Suite 500, Washington, DC 20530 (telephone: 202–307–6349).

**Dorothy B. Fountain,**
*Deputy Director of Operations, Antitrust Division.*

### United States District Court for the District of Columbia

*United States of America*, U.S. Department of Justice, Antitrust Division, 325 7th Street, NW., Suite 500, Washington, DC 20530; Plaintiff, v. *Cal Dive International, Inc.*, 400 N. Sam Houston Parkway E, Suite 400, Houston, Texas 77060, *Stolt Offshore, S.A.*, Dolphin House, Windmill Road, Sunbury-on-Thames, Middlesex, TW 16 THT, England, *Stolt Offshore, Inc.*, 10787 Clay Road, Houston, Texas 77041, and *S&H Diving, LLC*, 10787 Clay Road, Houston, Texas 77041, Defendants

Case Number 1:05CV02041.
Judge: Emmet G. Sullivan.

Deck Type: Antitrust.
Date Stamp: 10/18/2005.

**Complaint**

The United States of America, acting under the direction of the Attorney General of the United States, brings this civil action to enjoin permanently the proposed acquisition by Cal Dive International, Inc. ("Cal Dive") of certain assets of Stolt Offshore, Inc. and S&H Diving, LLC (hereinafter collectively "Stolt"), and complains and alleges as follows:

1. On or about April 11, 2005, Cal Dive entered into an agreement to purchase certain assets from Stolt, including a number of diving support vessels, saturation diving systems, and other assets used by Stolt to compete in the provision of saturation diving services in the United States Gulf of Mexico.

2. Cal Dive and Stolt are two of only three major providers of saturation diving services to offshore pipeline construction companies and to owners and operators of pipelines, platforms and other offshore structures located in the United States Gulf of Mexico. As two of the largest providers of these services, Cal Dive and Stolt regularly compete directly for saturation diving projects.

3. Cal Dive's acquisition of Stolt's saturation diving assets would eliminate Stolt as a competitor for the provision of saturation diving services in the United States Gulf of Mexico. As a result, purchasers of these services likely will face higher prices and reduced service. The proposed transaction would substantially reduce competition among providers of saturation diving services in the United States Gulf of Mexico, in violation of Section 7 of the Clayton Act, 15 U.S.C. 18.

*I. Jurisdiction and Venue*

4. This complaint is filed by the United States under Section 15 of the Clayton Act, as amended, 15 U.S.C. 25, to prevent and restrain the defendants from violating Section 7 of the Clayton Act, as amended, 15 U.S.C. 18.

5. The defendants are engaged in interstate commerce and in activities substantially affecting interstate commerce. Cal Dive and Stolt provide saturation diving services, pipelay services, and other support services to customers located in multiple states in and around the United States Gulf of Mexico. The defendants' sales of saturation diving services in the United States represent a regular, continuous and substantial flow of interstate

commerce, and have had a substantial effect upon interstate commerce.

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. 1331, 1337 and Section 15 of the Clayton Act, 15 U.S.C. 25.

7. The defendants have consented to personal jurisdiction and venue in this judicial district.

*II. The Defendants and the Transaction*

8. Cal Dive International, Inc. is a corporation organized and existing under the laws of the state of Minnesota. Its corporate headquarters are located in Houston, Texas, and its primary subsea and marine services operations are located in Morgan City, Louisiana. Cal Dive provides a full range of marine contracting services in both shallow and deep water. Cal Dive employs more than 300 full-time supervisors, divers, tenders and support staff, making it the largest provider of diving services in the United States Gulf of Mexico. Cal Dive's total revenues in 2004 exceeded $540 million, including more than $45 million for saturation diving services in the United States Gulf of Mexico.

9. Stolt Offshore, Inc., with headquarters in Houston, Texas, is a corporation organized and existing under the laws of the state of Louisiana. S&H Diving, LLC, is a Louisiana limited liability company, with offices in Houston, Texas. Stolt Offshore S.A., the ultimate parent of both Stolt Offshore, Inc. and S&H Diving, LLC, is a major international marine contractor registered in Luxembourg, with 2004 revenues in excess of $1.2 billion worldwide. In the United States Gulf of Mexico, Stolt offers construction and installation engineering services for conventional pipelines, subsea tiebacks, heavy lift salvage, and subsea inspection, maintenance and repair services. Stolt is one of the largest providers of saturation diving services in the United States Gulf of Mexico. In 2004, Stolt had revenues in excess of $30 million from saturation diving services in the United States Gulf of Mexico.

10. On or about April 11, 2005, Cal Dive and Stolt entered into an Asset Purchase Agreement, pursuant to which Cal Dive agreed to purchase, and Stolt agreed to sell, certain assets for a purchase price of $125 million dollars. Pursuant to the Asset Purchase Agreement, Cal Dive would acquire, among other assets, all of the saturation diving systems, vessels and related equipment currently used by Stolt to provide saturation diving services in the United States Gulf of Mexico.

*III. Trade and Commerce*

*A. Background*

11. Much of the world's oil and gas reserves are located in offshore areas, including in the United States Gulf of Mexico. Marine contractors design, engineer, fabricate, and install offshore drilling and production rigs, platforms and other structures, which are used to extract crude oil and natural gas from commercially significant subsea reservoirs. Marine contractors, using pipelay vessels, also install undersea pipelines that transport crude oil, natural gas, and other natural resources from production sites to other sites offshore and onshore.

12. Human divers perform a wide variety of services for marine contractors as well as the owners and operators of offshore pipelines, platforms and other structures. Divers are used in subsea construction projects, for inspection, maintenance and repair services, and for recovery and salvage after structures are damaged by weather or accident. Divers can perform these services either by surface diving or saturation diving.

13. Surface divers can perform diving services only in relatively shallow depths. Following each dive, surface divers must undertake time-consuming decompression procedures to allow their bodies to adjust to the lower pressure that exists at the surface.

14. Saturation diving systems permit divers to work for prolonged periods and at much greater depths, without undergoing decompression after each dive. During saturation diving operations, divers live for as long as several weeks in airtight chambers aboard diving vessels. The pressure in those chambers is maintained at a level that is equivalent to the pressure at the subsea work site. Saturation diving systems are typically rated to depths of between 600 and 1,000 feet of sea water. A saturation diving system typically consists of one or more saturation chambers, one or more diving bells, and related safety, monitoring and life support systems and equipment. Saturation diving systems can be permanently installed on a vessel, or they can be portable, which allows them to be transported from one vessel to another.

15. A vessel must maintain a fixed position while a saturation dive is in progress. This can be accomplished either by anchor-and-chain mooring systems or through dynamic positioning. Some saturation diving projects require dynamically-positioned vessels because of harsh weather,

environmental concerns, water depth, or pipeline congestion on the sea floor.

**B. Relevant Product Market**

16. The relevant product market affected by this transaction is "saturation diving services," the provision of human diving services utilizing saturation diving systems, diving support vessels and other assets. Providers and customers of saturation diving services analyze the specific characteristics of a saturation diving project to determine which resources, such as dynamically positioned vessels or saturation chambers of a particular size, are required or are most economical for completing the project. Saturation diving service providers often bid against one another for projects, and are relatively more constrained in the prices they can charge for a particular project by competitors who have comparably more suitable resources available for completing that project.

17. For projects that utilize divers at substantial depths or for extended periods, surface diving is not a safe or cost-effective substitute for saturation diving services. Other underwater technologies, such as remotely operated vehicles or atmospheric diving suits, have significant practical, technical and cost limitations. It is thus unlikely that a sufficient number of customers would switch away from saturation diving services to make a small but significant nontransitory increase in the price of those services unprofitable.

18. Saturation diving services is a relevant antitrust product market and a line of commerce within the meaning of Section 7 of the Clayton Act.

**C. Relevant Geographic Market**

19. Cal Dive and Stolt compete with each other for the provision of saturation diving services in the United States Gulf of Mexico. In the event of an increase in the price of saturation diving services in the United States Gulf of Mexico, it is unlikely that a sufficient number of other providers of saturation diving services operating outside of the United States Gulf of Mexico would bid their services in this market such that a price increase would be unprofitable.

20. The United States Gulf of Mexico is a relevant geographic antitrust market and a section of the country within the meaning of Section 7 of the Clayton Act.

**IV. Anticompetitive Effects**

**A. Market Concentration**

21. The relevant market is highly concentrated and would become significantly more concentrated as a

result of the proposed transaction. An appropriate measure of concentration in the market for saturation diving services is capacity, calculated on the basis of the number of saturation diving systems used by each competitor in the relevant geographic market. Prior to the transaction, Cal Dive accounts for more than 30%, and Stolt for approximately 20%, of all saturation diving systems competing in the United States Gulf of Mexico.

22. The transaction would increase substantially the concentration in the market for saturation diving services in the United States Gulf of Mexico. The number of significant competitors in that market would be reduced from three to two. As measured by the Herfindahl-Hirschman Index ("HHI"), which is commonly employed in merger analysis and is defined and explained in Appendix A to this Complaint, the proposed transaction would increase the HHI by more than 1100, resulting in a post-merger HHI of approximately 3000.

**B. Loss of Competition**

23. The proposed transaction is likely to substantially reduce competition in the market for saturation diving services in the United States Gulf of Mexico. The transaction would combine the saturation diving assets of two of the largest providers of saturation diving services in the United States Gulf of Mexico, giving Cal Dive more than half of the capacity in the market.

24. Customers for saturation diving services in the United States Gulf of Mexico have benefitted from competition between Cal Dive and Stolt. Cal Dive and Stolt each possess similar types of saturation diving systems and vessels that provide the two companies the ability to effectively bid against each other for a wide variety of saturation diving jobs, including those that call for either dynamically positioned vessels or vessels with anchor-and-chain mooring systems. Many customers consider Cal Dive and Stolt to be the most attractive competitors in the market for saturation diving services in the United States Gulf of Mexico because of their size, vessels, experience, and reputation for safety. The two companies often directly compete against one another for particular projects, bidding similar combinations of resources. This direct and close competition has resulted in lower prices and higher quality in saturation diving services than would otherwise have existed.

25. If Cal Dive's proposed acquisition of Stolt's saturation diving assets is consummated, the competition between Cal Dive and Stolt will be eliminated, and the market for saturation diving

services in the United States Gulf of Mexico will become substantially more concentrated. This loss of competition increases the likelihood of unilateral action by Cal Dive to increase prices and diminish the quality or quantity of services or of coordinated action by the remaining players in the market to achieve the same ends.

**C. Entry and Expansion**

26. Entry by a new saturation diving services provider or expansion by an existing fringe competitor would be difficult, time consuming and expensive. It would require obtaining saturation diving systems, suitable vessels and related equipment and the divers and other personnel necessary to provide saturation diving services. It also would require establishing the operational experience and reputation for safety demanded by customers in the market. Redeployment of saturation diving assets from outside the United States Gulf of Mexico is unlikely to constrain a price increase in the relevant market. Therefore, new entry or expansion would not be timely, likely or sufficient to thwart the competitive harm of the acquisition.

**V. Violations Alleged**

27. The effect of Cal Dive's proposed acquisition of the saturation diving support assets of Stolt, if it were consummated, may be substantially to lessen competition in the provision of saturation diving services in interstate trade and commerce in the United States Gulf of Mexico, in violation of Section 7 of the Clayton Act, 15 U.S.C. 18. Unless restrained, the transaction will likely have the following effects, among other:

a. Actual and potential competition between Cal Dive and Stolt in the provision of saturation diving services would be eliminated;

b. Competition generally in the provision of saturation diving services would be eliminated or substantially lessened;

c. Prices of saturation diving services would increase; and

d. Quality and service levels in the provision of saturation diving services would decrease.

**Request for Relief**

The United States requests that:
1. the proposed transaction be adjudged to violate Section 7 of the Clayton Act;
2. the defendants be permanently enjoined from carrying out the Asset Purchase Agreement dated April 11, 2005, or from entering into or carrying out any agreement, understanding, or

plan, the effect of which would be to allow Cal Dive to merge with or acquire any of the saturation diving equipment, saturation diving vessels, or other saturation diving assets of Stolt;

3. the United States be assessed costs of this action;

4. the United States have such other relief as the Court may deem just and proper.

Dated: October 18, 2005.

Respectfully submitted,

For Plaintiff United States

Thomas O. Barnett,

*Acting Assistant Attorney General.*

J. Bruce McDonald,

*Deputy Assistant Attorney General.*

Dorothy B. Fountain,

*Deputy Director of Operations.*

Donna N. Kooperstein,

*Chief, Transportation, Energy, and Agriculture Section.*

William H. Stallings,

*Assistant Chief, Transportation, Energy, and Agriculture Section.*

Jennifer L. Cihon (OH Bar #0068404),
Angela L. Hughes (DC Bar #303420),
John M. Snyder (DC Bar #456921),
Bethany K. Hipp (GA Bar #141678),

*Trial Attorneys, U.S. Department of Justice, Antitrust Division, 325 7th St., NW., Suite 500, Washington, DC 20530, Telephone: 202/307–3278.*

## Appendix A—Definition of "HHI"

The term "HHI" means the Herfindahl-Hirschman Index, a commonly accepted measure of market concentration. The HHI is calculated by squaring the market share of each firm competing in the market and then summing the resulting numbers. For example, for a market consisting of four firms with shares of 30, 30, 20, and 20 percent, the HHI is 2,600 ($30^2 + 30^2 + 20^2 + 20^2 = 2,600$). The HHI takes into account the relative size and distribution of the firms in a market. It approaches zero when a market is occupied by a large number of firms of relatively equal size and reaches its maximum of 10,000 when a market is controlled by a single firm. The HHI increases both as the number of firms in the market decreases and as the disparity in size between those firms increases.

Markets in which the HHI is between 1000 and 1800 are considered to be moderately concentrated, and markets in which the HHI is in excess of 1800 points are considered to be highly concentrated. Transactions that increase the HHI by more than 100 points in highly concentrated markets presumptively raise significant antitrust concerns under the Department of Justice and Federal Trade Commission 1992 Horizontal Merger Guidelines.

## Certificate of Service

I hereby certify that on October 18, 2005, I caused a copy of the foregoing Complaint, proposed Final Judgment, Hold Separate Stipulation and Order and Plaintiff United States' Explanation of Consent Decree Procedures to be served on counsel for defendants in this matter in the manner set forth below:

By electronic mail and hand delivery:

Counsel for Defendant Cal Dive International, Inc., Daniel L. Wellington (DC Bar #273839), Neely B. Agin (DC Bar #456005), Fulbright & Jaworski LLP, 801 Pennsylvania Avenue, NW., Washington, DC 20004–2623, Tel: (202) 662–4574, Fax: (202) 662–4643.

Counsel for Defendants Stolt Offshore S.A., Stolt Offshore, Inc., and S&H Diving LLC, Paul C. Cuomo (DC Bar #457793), Sean F. Boland (DC Bar &249318), Howrey LLP, 1299 Pennsylvania Avenue, NW., Washington, DC 20004–2402, Tel: (202) 783–0800, Fax: (202) 383–6610.

Jennifer L. Cihon (OH Bar #0068404),

*Department of Justice, Antitrust Division, 325 Seventh Street, NW., Suite 500, Washington, DC 20530, (202) 307–3278, (202) 616–2441 (Fax).*

## The United States District Court for the District of Columbia

*United States of America,* Plaintiff, v. *Cal Dive International, Inc., Stolt Offshore S.A., Stolt Offshore, Inc., and S&H Diving, LLC,* Defendants

Case No. Judge Deck Type: Antitrust
Filed:

## Proposed Final Judgment

*Whereas,* plaintiff, United States of America, filed its Complaint on October 18, 2005, plaintiff and defendants, by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law, and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

*And whereas,* the defendants have stipulated solely for purposes of this action that the Court has personal jurisdiction over the defendants;

*And whereas,* the defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

*And whereas,* the essence of this Final Judgment is the prompt and certain divestiture of a saturation diving system and diving support vessels by defendant Cal Dive to assure that competition is not substantially lessened;

*And Whereas,* the United States requires defendant Cal Dive to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

*And Whereas,* the defendants have represented to the United States that the divestiture required below can and will be made and that the defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

*Now therefore,* before any testimony is taken, without trail or adjudication of any issue of fact or law, and upon consent of the parties, it is *ordered, adjudged and decreed:*

### I. Jurisdiction

This court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against the defendants under section 7 of the Clayton Act, as amended, 15 U.S.C. 18.

### II. Definitions

As used in this Final Judgment:

A. "Acquirer" or "Acquirers" means the entity or entities to whom defendant Cal Dive divests the Saturation Diving Assets.

B. "Cal Dive" means Cal Dive International, Inc., a corporation organized and existing under the laws of the state of Minnesota with its headquarters in Houston, Texas, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, joint ventures, and their directors, officers, managers, agents, and employees.

C. "Person" means any natural person, corporation, association, firm, partnership, or other business or legal entity.

D. "Saturation Diving Assets" means the vessel designated as the Seaway Defender, the vessel designated as the Midnight Carrier, and the saturation diving system designated as the Torch Saturation Diving System.

E. "Stolt" means Stolt Offshore S.A., a Luxembourg registered company, its United States subsidiary, Stolt Offshore, Inc., a corporation organized and existing under the laws of the state of Louisiana, with headquarters in Houston, Texas, and S&H Diving LLC, a Louisiana limited liability company with offices in Houston, Texas.

F. "Torch Saturation Diving System" means the portable saturation diving system that Cal Dive purchased from Torch Offshore, Inc. that has six major components: a four-man single lock saturation chamber, a transfer lock (TUP), a two-man diving bell, a main umbilical, a control van, and a supply van.

### III. Applicability

This Final Judgment applies to the defendants, Cal Dive and Stolt, and all

other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

## IV. Divestiture

A. Defendant Cal Dive is hereby ordered and directed (1) to divest the Torch Saturation Diving System and the vessel designated as the Midnight Carrier within sixty (60) calendar days after the date of filing of the Complaint in this matter, or within five (5) days after notice of the entry of this Final Judgment by the Court; whichever is later; and (2) to divest the vessel designated as the Seaway Defender within ninety (90) calendar days after the date of the filing of the Complaint in this matter, or within five (5) days after notice of the entry of this Final Judgment by the Court, whichever is later. The divestitures must be made in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to the United States in its sole discretion. The United States, in its sole discretion, may agree to extend each time period up to thirty (30) calendar days, and shall notify the Court in such circumstances. Defendant Cal Dive agrees to use its best efforts to divest the Saturation Diving Assets as expeditiously as possible.

B. In accomplishing the divestiture ordered by this Final Judgment, defendant Cal Dive promptly shall make known, by usual and customary means, the availability of the Saturation Diving Assets. Defendant Cal Dive shall inform any person making inquiry regarding a possible purchase of the Saturation Diving Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. The defendants shall offer to furnish to each prospective Acquirer, subject to customary confidentiality assurances, all information and documents relating to the Saturation Diving Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client or work-product privileges. The defendants shall make available such information and documents to the United States at the same time that such information and documents are made available to any other person.

C. The defendants shall provide to each Acquirer of some or all of the Saturation Diving Assets, and to the United States, the name and current contact information (if known) for each individual who is currently, or who, to the best of the defendants' knowledge, has been involved at any time since

June 1, 2004, whether onshore or offshore, in the operation of the specific Saturation Diving Assets to be acquired by the Acquirer or in the provision of diving services by or with any of the specific Saturation Diving Assets to be acquired by the Acquirer, including divers, diving tenders, and diving supervisors or superintendents. The defendants shall not impede or interfere with any negotiations by the Acquirer or Acquirers to employ any person who has worked with, or whose principal responsibilities have concerned, any of the Saturation Diving Assets.

D. Consistent with customary due diligence processes and subject to customary confidentiality assurances, the defendants shall permit each prospective Acquirer of some or all Saturation Diving Assets to have reasonable access to personnel and to make inspection of the Saturation Diving Assets; access to any and all environmental and other permit documents and information; and access to any and all financial, operational, or other documents and information.

E. Defendant Cal Dive also agrees to divest the Saturation Diving Assets in a condition and state of repair equal to their condition and state of repair as of the date Cal Dive acquires them, ordinary wear and tear excepted.

F. The defendants will not undertake, directly or indirectly, any challenges to any permits or certification relating to the operation of the Saturation Diving Assets, or otherwise take any action to impede the divestiture or operation of the Saturation Diving Assets.

G. The divestiture of the Saturation Diving Assets shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Saturation Diving Assets will be operational or made operational by the Acquirer or Acquirers, will be used by the Acquirer or Acquirers as part of a viable, ongoing business engaged in the provision of saturation diving services in the United States Gulf of Mexico, and will remedy the competitive harm alleged in the Complaint. The divestiture, whether pursuant to Section IV or Section V of this Final Judgment:

1. Shall be made to an Acquirer or Acquirers that, in the United States's sole judgment, has the intent and capability (including the necessary operational, technical, and financial capability) to compete effectively in the saturation diving business in the United States Gulf of Mexico; and

2. Shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between the Acquirer or Acquirers and defendant Cal Dive gives

the defendants the ability unreasonably to raise the Acquirer's or Acquirers' costs, to lower the Acquirer's or Acquirers' efficiency, or otherwise to interfere in the ability of the Acquirer or Acquirers to compete effectively.

## V. Appointment of Trustee

A. If defendant Cal Dive has not divested the Saturation Diving Assets within the time period specified in Section IV(A), defendant Cal Dive shall notify the United States of that fact in writing. Upon application of the United States, in its sole discretion, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Saturation Diving Assets.

B. After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Saturation Diving Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer or Acquirers acceptable to the United States, in its sole discretion, at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V and VI of the Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of defendant Cal Dive any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonable necessary in the trustee's judgment to assist in the divestiture.

C. The defendants shall not object to a sale of the Saturation Diving Assets by the trustee on any ground other than the trustee's malfeasance. Any such objections by the defendants must be conveyed in writing to the United States and the trustee within 10 (10) calendar days after the trustee has provided the notice required under Section VI.

D. The trustee shall serve at the cost and expense of defendant Cal Dive, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the Saturation Diving Assets and for all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to the defendant Cal Dive and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Saturation Diving Assets and based on a fee arrangement providing the trustee

with an incentive based on the price and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E. The defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the Saturation Diving Assets and the personnel, books, and records of the Saturation Diving Assets, and defendant Cal Dive shall develop financial and other information relevant to the Saturation Diving Assets as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. The defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F. After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, the Saturation Diving Assets and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Saturation Diving Assets.

G. If the trustee has not accomplished such divestiture within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture; (2) the reasons, in the trustee's judgment, why the required divestiture has not been accomplished; and (3) the trustee's recommendations. To the extent such reports contains information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States who shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include, without limitation, extending

the trust and the term of the trustee's appointment by a period requested by the United States.

## VI. Notice of Proposed Divestiture

A. Within two (2) business days following execution of a definitive divestiture agreement, defendant Cal Dive or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify defendant Cal Dive. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire the Saturation Diving Assets, together with full details of the same.

B. Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from the defendants, the proposed Acquirer or Acquirers, any other third party, or the trustee if applicable, additional information concerning the proposed divestiture, the proposed Acquirer or Acquirers and any other potential Acquirer or Acquirers. The defendants and the trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C. Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from the defendants, the proposed Acquirer or Acquirers, any third party, and the trustee, whichever is later, the United States shall provide written notice to defendant Cal Dive and the trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to defendants' limited right to object to the sale under Section V(C) of this Final Judgment. Absent written notice that the United States does not object to the proposed Acquirer or Acquirers or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated. Upon objection by the defendants under Section V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. Financing

The defendants shall not finance all or any part of any purchase made pursuant to Section IV or V of this Final Judgment.

## VIII. Hold Separate

Until the divestiture required by this Final Judgment has been accomplished, the defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court. The defendants shall take no action that would jeopardize, delay, or impede the divestiture order by this Order.

## IX. Affidavits

A. Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, the defendants shall deliver to the United States an affidavit that describes the fact and manner of their compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any or all of the Saturation Diving Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendant Cal Dive has taken to solicit buyers for the Saturation Diving Assets, and to provide required information to any prospective Acquirer or Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by the defendants, including limitations on the information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B. Within twenty (20) calendar days of the filing of the Complaint in this matter, the defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions the defendants have taken and all steps the defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. The defendants shall deliver to the United States an affidavit describing any changes to the efforts and actions outlined in the defendants' earlier affidavits filed pursuant to this section

within fifteen (15) calendar days after the change is implemented.

C. Defendant Cal Dive shall keep all records of all efforts made to preserve and to divest the Saturation Diving Assets until one year such divestiture has been completed.

## X. Compliance Inspections

A. For purposes of determining or securing compliance with this Final Judgment, or of determining whether the Final Judgment should be modified or vacated, and subject to any legally recognized privilege, from time to time duly authorized representatives of the United States Department of Justice, including consultants and other persons retained by the United States, shall, upon written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to the defendants, be permitted:

1. Access during the defendants' office hours to inspect and copy, or at the United States, option to require the defendants to provide copies of, all books, ledgers, accounts, records and documents in the possession, custody, or control of the defendants, relating to any matters contained in this Final Judgment; and

2. To interview, either informally or on the record, the defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters. The interviews shall be shall be subject to the reasonable convenience of the interviewee and without restraint or interference by the defendants.

B. Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, the defendants shall submit written reports, or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C. No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D. If at the time information or documents are furnished by the defendants to the United States, the defendants represent and identify in writing the material in any such

information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and the defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give the defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI. Notification

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. 18a, for three years after entry of this Final Judgment, defendant Cal Dive, without providing advance notification to the Department of Justice, shall not directly or indirectly acquire any saturation chamber that, to the best of Cal Dive's knowledge, has been operated in or located in the United States Gulf of Mexico at any time since October 1, 2002, whether as part of a portable saturation diving system or as part of saturation diving system built into a vessel, or any interest, including any financial, security, loan, equity or management interest in, any company that owns or operates such a saturation chamber. Such notification shall be provided to the Department of Justice in the same format as, and per the instructions relating to, the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code of Federal Regulations as amended. Notification shall be provided at least thirty (30) calendar days prior to the acquisition, and shall include, beyond what may be required by the applicable instructions; the names of the principal representatives of the parties to the agreement who negotiated the agreement, and any management or strategic plans discussing the proposed transaction.

## XII. No Reacquisition

Defendant Cal Dive may not reacquire any of the Saturation Diving Assets during the term of this Final Judgment.

## XIII. Retention of Jurisdiction

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIV. Expiration of Final Judgment

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

## XV. Public Interest Determination

Entry of this Final Judgment is in the public interest, and the parties have complied with the procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. 16.

Dated:

_____

United States District Judge

### Certificate of Service

I hereby certify that on October 18, 2005, I caused a copy of the foregoing Complaint, proposed Final Judgment, Hold Separate Stipulation and Order and Plaintiff United States' Explanation of Consent Decree Procedures to be served on counsel for defendants in this matter in the manner set forth below:

By electronic mail and hand delivery:

Counsel for Defendant Cal Dive International, Inc., Daniel L. Wellington (D.C. Bar #273839), Neely B. Agin (D.C. Bar #456005), Fullbright & Jaworski LLP, 801 Pennsylvania Avenue, NW., Washington, DC 20004–2623, Tel: (202) 662–4574, Fax: (202) 662–4643.

Counsel for Defendants Stolt Offshore S.A., Stolt Offshore, Inc. and S&H Diving LLC, Paul C. Cuomo (D.C. Bar #457793), Sean F. Boland (D.C. Bar #249318), Howrey LLP, 1299 Pennsylvania Avenue, NW., Washington, DC 20004–2402, Tel: (202) 783–0800, Fax: (202) 383–6610.

Jennifer L. Cihon (OH Bar #0068404)
Department of Justice, Antitrust Division, 325 Seventh Street, NW., Suite 500, Washington, DC 20530, (202) 307–3278, (202) 616–2441 (Fax).

**United States District Court for the District of Columbia**

*United States of America, Plaintiff, v. Cal Dive International, Inc., Stolt Offshore S.A., Stolt Offshore, Inc., and S&H Diving, LLC, Defendants*

Civil Case No.: 1:05CV02041
Judge: Emmet G. Sullivan
Deck Type: Antitrust
Date Stamp: October 20, 2005

### Competitive Impact Statement

Plaintiff United States of America ("United States"), pursuant to section 2(b) of the Antitrust Procedures and Penalties Act ("APPA" or "Tunney Act"), 15 U.S.C. 16(b)–(h), files this Competitive Impact Statement relating to the proposed Final Judgment submitted for entry in this civil antitrust proceeding.

HeinOnline -- 70 Fed. Reg. 62336 2005

## I. Nature and Purpose of the Proceeding

Defendant Cal Dive International, Inc. ("Cal Dive") and defendants Stolt Offshore, Inc. and S&H Diving, LLC (collectively "Stolt") entered into an Asset Purchase Agreement dated April 11, 2005, pursuant to which Cal Dive will acquire certain assets from Stolt, including a number of diving support vessels, saturation diving systems, and other assets used by Stolt to provide saturation diving services in the United States Gulf of Mexico. The United States filed a civil antitrust Complaint on October 18, 2005, seeking to enjoin the proposed acquisition. The Complaint alleges that the likely effect of this acquisition would be to reduce competition substantially for saturation diving services in the United States Gulf of Mexico in violation of section 7 of the Clayton Act, 15 U.S.C. 18. As a result, purchasers of these services likely would face higher prices and reduced service.

At the same time the Complaint was filed, the United States also filed a Hold Separate Stipulation and Order and proposed Final Judgment, which are designed to eliminate the anticompetitive effects of the acquisition. Under the proposed Final Judgment, which is explained more fully below, Cal Dive is required to divest the vessel designated as the Seaway Defender, the vessel designated as the Midnight Carrier, and the saturation diving system designated as the Torch Saturation Diving System (collectively, the "Saturation Diving Assets"). Under the terms of the Hold Separate Stipulation and Order and proposed Final Judgment, Cal Dive will take certain steps to ensure that, prior to such divestiture, the Saturation Diving Assets will remain independent of the rest of Cal Dive's assets and will be maintained in the same condition and state of repair as of the date Cal Dive acquired them, and that competition is maintained during the pendency of the ordered divestiture.

The United States and Defendants have stipulated that the proposed Final Judgment may be entered after compliance with the APPA. Entry of the proposed Final Judgment would terminate this action, except that the Court would retain jurisdiction to construe, modify, or enforce the provisions of the proposed Final Judgment and to punish violations thereof.

## II. Description of the Events Giving Rise to the Alleged Violation

### A. The Defendants and the Proposed Transaction

Cal Dive is a corporation organized and existing under the laws of the state of Minnesota. Its corporate headquarters are located in Houston, Texas, and its primary subsea and marine services operations are based in Morgan City, Louisiana. Cal Dive provides a full range of marine contracting services, which includes marine construction, robotic services, manned diving, and decommissioning services, in both shallow and deep water. Cal Dive employs more than 300 full-time supervisors, divers, tenders and support staff, making it the largest provider of diving services in the United States Gulf of Mexico. Cal Dive's total revenues in 2004 exceeded $540 million, including more than $45 million for saturation diving services in the United States Gulf of Mexico.

Stolt Offshore, Inc., with headquarters in Houston, Texas, is a corporation organized and existing under the laws of the state of Louisiana. S&H Diving, LLC, is a Louisiana limited liability company, with offices in Houston, Texas. Stolt Offshore S.A., the ultimate parent of both Stolt Offshore, Inc. and S&H Diving, LLC, is a major international marine contractor registered in Luxembourg, with 2004 revenues in excess of $1.2 billion worldwide. In the United States Gulf of Mexico, Stolt offers construction and installation engineering services for conventional pipelines; subsea tiebacks; heavy lift salvage; and subsea inspection, maintenance and repair services. Stolt is one of the largest providers of saturation diving services in the United States Gulf of Mexico. In 2004, Stolt had revenues in excess of $30 million from saturation diving services in the United States Gulf of Mexico.

Pursuant to the April 11, 2005 Asset Purchase Agreement, Cal Dive will acquire, among other assets, all of the saturation diving systems, diving support vessels and related equipment currently used by Stolt to provide saturation diving services in the United States Gulf of Mexico. The total purchase price is approximately $125 million.

The proposed transaction, as initially agreed to by Defendants, would reduce competition substantially for saturation diving services in the United States Gulf of Mexico. This acquisition is the subject of the Complaint and proposed Final Judgment filed by the United States on October 18, 2005.

### B. The Saturation Diving Services Industry

Much of the worlds's oil and gas reserves are located in offshore areas, including in the United States Gulf of Mexico. Marine contractors design, engineer, fabricate, and install offshore drilling and production rigs, platforms, and other structures, which are used to extract crude oil and natural gas from commercially significant subsea reservoirs. Marine contractors, using pipelay vessels, also install undersea pipelines that transport crude oil, natural gas and other natural resources from the production sites offshore and onshore.

Human divers perform a wide variety of services for marine contractors and owners and operators of offshore pipelines, platforms and other structures. Divers are used for subsea construction projects, for subsea inspection, maintenance and repair services, and for recovery and salvage after structures are damaged by weather or accident. Divers can perform these services either by surface diving or saturation diving.

Surface divers can perform diving services only in relatively shallow depths, generally not deeper than 150 feet of sea water. Surface divers must go through a time-consuming decompression process following each diver to allow their bodies to adjust to the lower pressure that exists at the surface.

Saturation divers can work for prolonged periods and at much greater depths, without undergoing decompression after each dive. During saturation diving operations, divers live for as long as several weeks in airtight chambers aboard diving vessels. The pressure in those chambers is maintained at a level that is equivalent to the pressure at the subsea work site. The divers travel from the saturation chamber to the subsea work site in similarly pressurized closed capsules called bells that allow the divers to remain at constant pressure during their descent to the sea floor.

Saturation diving systems are typically rated to allow divers to work at depths between 600 and 1,000 feet of sea water. A saturation diving system typically consists of one or more saturation chambers, one or more diving bells, and related safety, monitoring and life support systems and equipment. Saturation diving systems can be permanently installed on a vessel, or they can be portable, in which case they can be transported from one vessel to another.

**62338**   **Federal Register** / Vol. 70, No. 209 / Monday, October 31, 2005 / Notices

A vessel must maintain a fixed position during a saturation dive. This can be accomplished either by anchor-and-chain mooring systems, which require surveyors to determine the appropriate anchor placement, or through dynamic positioning systems, which position vessels using satellite technology. Generally, vessels positioned by anchor and chain mooring systems operate in shallower waters. Vessels with dynamic positioning systems are more often used in deeper water, in areas with many pipelines on the sea floor and in hazardous weather conditions. Some saturation diving projects require a dynamically positioned vessel. Other projects can be executed using either mode of positioning.

C. The Competitive Effects of the Transaction on Saturation Diving Services in the United States Gulf of Mexico

Cal Dive's proposed acquisition of the Saturation Diving Assets will substantially reduce competition for saturation diving services in the United States Gulf of Mexico. Saturation diving services are the provision of human diving services utilizing saturation diving systems. Providers and customers of saturation diving services analyze the specific characteristics of a saturation diving project to determine which resources, such as dynamically positioned vessels or saturation chambers of a particular size, are required or are most economical for completing the project. Saturation diving service providers often bid against one another for projects, and are relatively more constrained in the prices they can charge for a particular project by competitors who have comparably more suitable resources available for completing that project.

Surface diving is not a safe or cost-effective substitute for saturation diving services for projects that utilize divers at substantial depths or for extended periods. Other underwater technologies, such as remotely operated vehicles or atmospheric diving suites, have significant practical, technical and cost limitation that prevent them from being viable alternatives to saturation diving.

Cal Dive and Stolt compete with one another for the provision of saturation diving services in the United States Gulf of Mexico. In the event of an increase in the price of saturation diving services in the United States Gulf of Mexico, it is unlikely that a sufficient number of other providers of saturation diving services operating outside the United States Gulf of Mexico would bid their services inside the United States Gulf

such that a price increase would be unprofitable. Therefore the relevant geographic market where the transaction will substantially reduce competition for saturation diving services is the United States Gulf of Mexico.

Cal Dive and Stolt are the two of the largest providers of saturation diving services in the United States Gulf of Mexico. Their combined market share in that market, measured on the basis of the number of saturation diving systems used in the United States Gulf of Mexico, is approximately 50 percent.

Customers of saturation diving services in the United States Gulf of Mexico have benefitted from competition between Cal Dive and Stolt. Cal Dive and Stolt each possess similar types of saturation diving systems and vessels that provide the two companies the ability to effectively bid against one another for a wide variety of saturation diving jobs, including those that call for dynamically positioned vessels and those that call for vessels equipped with anchor-and-chain mooring systems. Many customers consider Cal Dive and Stolt to be the two most attractive competitors for saturation diving services in the United States Gulf of Mexico because of their size, vessels, experience, and reputation for safety. The two companies often directly compete against one another for particular projects, bidding similar combinations of resources. This direct and close competition has resulted in lower prices and higher quality in saturation diving service than would otherwise have existed.

The transaction would increase substantially concentration in the market for saturation diving services in the United States Gulf of Mexico. As measured by the Herfindahl-Hirschman Index ("HHI"), which is commonly employed in merger analysis and is defeated and explained in the Appendix A to the Complaint, the proposed transaction would increase the HHI relating to the number of saturation diving systems by more than 1100, resulting in a post merger HHI of approximately 3000.

By eliminating competition between Cal Dive and Stolt, the transaction would reduce the number of significant competitors in the market for saturation diving services in the United States Gulf of Mexico from three to two. This loss of competition increases the likelihood of unilateral action by Cal Dive to increase prices and diminish the quality or quantity of services, or of coordinated action by the remaining players in the market to achieve the same ends.

Entry by a new saturation diving services provider or expansion by an

existing fringe competitor would be difficult, time consuming and expensive. It would require obtaining saturation diving systems, suitable vessels and related equipment, as well as the divers and other personnel necessary to provide saturation diving services. It also would require establishing the operational experience and reputation for safety demanded by customers in the market. Redeployment of saturation diving assets from outside the United States Gulf of Mexico is unlikely to constrain a price increase in the relevant market. Therefore, new entry or expansion would not timely, likely, or sufficient thwart the competitive harm of the proposed acquisition.

For these reasons, the United States concluded that Cal Dive's proposed acquisition of the Saturation Diving Assets will likely substantially lessen competition, in violation of Section 7 of the Clayton Act, in the provision of saturation diving services in the United States Gulf of Mexico.

III. Explanation of the Proposed Final Judgment

A. Divestiture

The divestiture requirements of the proposed Final Judgment will maintain competition for saturation diving services in the United States Gulf of Mexico by allowing independent competitors to acquire the Saturation Diving Assets. The proposed Final Judgment requires Cal Dive to divest the portable saturation diving system designated the Torch Saturation Diving System and the vessel designated as the Midnight Carrier, an anchor-and-chain mooring vessel capable of accommodating a portable saturation diving system, within sixty (60) calendar days after the filing of the Complaint in this matter, or within five (5) days after notice of the entry of this Final Judgment by the Court, whichever is later, and to divest the vessel designated as the Seaway Defender, a dynamically positioned vessel with a built-in saturation diving system, within ninety (90) days after the Complaint in this matter, or within five (5) days after notice of the entry of this Final Judgment by the Court, whichever is later. The United States may extend each time period available to Cal Dive to complete the divestiture up to an additional thirty (30) days.

The Saturation Diving Assets must be divested in such a way as to satisfy the United States, in its sole discretion, that the Saturation Diving Assets will be operational or made operational by the acquirer or acquirers and will be used

by the acquirer or acquirers as part of a viable, ongoing business engaged in the provision of saturation diving services in the United States Gulf of Mexico. Cal Dive must take all reasonable steps necessary to accomplish the divestiture quickly and shall cooperate with prospective purchasers. The Defendants must also provide acquirers information relating to personnel that are or have been involved, at any time since June 1, 2004, in the operation of, or provision of diving services by, the Saturation Diving Assets, including divers, diving tenders, and diving supervisors or superintendents. The Defendants further must refrain from interfering with any negotiations by the acquirer or acquirers to employ any of the personnel that are or have been involved in the operation of, or provision of diving services by, any of the Saturation Diving Assets.

The proposed Final Judgment also requires Cal Dive, for a period of three years after the entry of the Final Judgment, to provide advance notice to the Department of Justice before acquiring any saturation chamber that has been operated in or located in the United States Gulf of Mexico at any time since October 1, 2002, whether as a part of a portable saturation diving system or as part of a saturation diving system built into a vessel, or any interest in any company that owns or operates such a saturation chamber. Further, the proposed Final Judgment restricts Cal Dive from reacquiring any of the Saturation Diving Assets during the term of the proposed Final Judgment.

### B. Use of a Divestiture Trustee

In the event that Cal Dive does not accomplish the divestiture within the periods prescribed in the proposed Final Judgment, the proposed Final Judgment provides that the Court will appoint a trustee selected by the United States to effect the divestiture. If a trustee is appointed, the proposed Final Judgment provides that Cal Dive will pay all the costs and expenses of the trustee. The trustee's commission will be structured so as to provide an incentive for the trustee based on the price obtained and the speed with which the divestiture is accomplished. After his or her appointment becomes effective, the trustee will file monthly reports with the Court and the United States setting forth his or her efforts to accomplish the divestiture. At the end of six months, if the divestiture has not been accomplished, the trustee and the United States will make recommendations to the Court, which shall enter such orders as appropriate to carry out the purpose of the trust,

including extending the trust or the term of the trustee's appointment.

The divestiture provisions of the proposed Final Judgment will eliminate the anticompetitive effects of the proposed acquisition. The divestitures of the Saturation Diving Assets will preserve competition in the market for saturation diving services by maintaining an independent and economically viable competitor in the United States Gulf of Mexico.

### IV. Remedies Available to Potential Private Litigants

Section 4 of the Clayton Act, 15 U.S.C 15, provides that any person who has been injured as a result of conduct prohibited by the antitrust laws may bring suit in federal court to recover three times the damages the person has suffered, as well as cost and reasonable attorneys' fees. Entry of the proposed Final Judgment will neither impair nor assist the bringing of any private antitrust damage action. Under the provisions of section 5(a) of the Clayton Act, 15 U.S.C. § 16(a), the proposed Final Judgment has no prima facie effect in any subsequent private lawsuit that may be brought against Defendants.

### V. Procedures Available for Modification of the Proposed Final Judgment

The United States and Defendants have stipulated that the proposed Final Judgment may be entered by the Court after compliance with the provisions of the APPA, provided that the United States has not withdrawn its consent. The APPA conditions entry upon the Court's determination that the proposed Final Judgment is in the public interest.

The APPA provides a period of at least sixty (60) days preceding the effective date of the proposed Final Judgment within which any persons may submit to the United States written comments regarding the proposed Final Judgment. Any person who wishes to comment should do so within sixty (60) days of the date of publication of this Competitive Impact Statement in the Federal Register. All comments received during this period will be considered by the Department of Justice, which remains free to withdraw its consent to the proposed Final Judgment at any time prior to the Court's entry of judgment. The comments and the response of the United States will be filed with the Court and published in the Federal Register.

Written comments should be submitted to: Donna N. Kooperstein, Chief, Transportation, Energy & Agriculture Section, Antitrust Division, United States Department of Justice, 325

Seventh Street, NW., Suite 500, Washington, DC 20530.

The proposed Final Judgment provides that the Court retains jurisdiction over this action, and the parties may apply to the Court for any order necessary or appropriate for the modification, interpretation, or enforcement of the Final Judgment.

### VI. Alternatives to the Proposed Final Judgment

The United States considered, as an alternative to the proposed Final Judgment, a full trial on the merits against Defendants. The United States could have continued the litigation and sought preliminary and permanent injunctions against Cal Dive's acquisition of certain Stolt assets. The United States is satisfied, however, that the divestiture of assets described in the proposed Final Judgment will preserve competition in the market for saturation diving services in the United States Guld of Mexico.

### VII. Standard of Review Under the APPA for the Proposed Final Judgment

The APPA requires that proposed consent judgments in antitrust cases brought by the United States be subject to a sixty (60) day comment period, after which the Court shall determine whether entry of the proposed Final Judgment "is in the public interest." 15 U.S.C. 16(c)(1). In making that determination, the Court shall consider:

(A) the competitive impact of such judgment, including termination of alleged violations, provisions for enforcement and modification, duration of relief sought, anticipated effects of alternative remedies actually considered, whether its terms are ambiguous, and any other competitive considerations bearing upon the adequacy of such judgment that the court deems necessary to a determination of whether the consent judgment is in the public interest; and

(B) the impact of entry of such judgment upon competition in the relevant market or markets, upon the public generally and individuals alleging specific injury from the violations set forth in the complaint including consideration of the public benefit, if any, to be derived from a determination of the issues at trial.

15 U.S.C. 16(c)(1)(A) & (B). As the United States Court of Appeals for the District of Columbia Circuit has held, the APPA permits a court to consider, among other things, the relationship between the remedy secured and the specific allegations set forth in the government's complaint, whether the decree is sufficiently clear, whether enforcement mechanisms are sufficient, and whether the decree may positively harm third parties. See *United States* v.

**62340**   Federal Register / Vol. 70, No. 209 / Monday, October 31, 2005 / Notices

*Microsoft Corp.,* 56 F.3d 144B, 1458–62 (D.C. Cir. 1995).

"Nothing in this section shall be construed to require the court to conduct an evidentiary hearing or to require the court to permit anyone to itnervene." 15 U.S.C. 16(e)(2). Thus, in conducting this inquiry, "[t]he court is nowhere compelled to go to trial or to engage in extended proceedings which might have the effect of vitiating the benefits of prompt and less costly settlement through the consent decree process." 119 Cong. Rec. 24,598 (1973)(statement of Senator Tunney).[1] Rather.

[a]bsent a showing of corrupt failure of the government to discharge its duty, the Court, in making its public interest finding, should * * * carefully consider the explanations of the government in the competitive impact statement and its response to comments in order to determine whether those explanations are reasonable under the circumstances.

*United States* v. *Mid-America Dairymen, Inc.,* 1977–1 Trade Cas. (CCH) ¶ 61,508, at 71,980 (W.D. Mo. 1977).

Accordingly, with respect to the adequacy of the relief secured by the decree, a court may not "engage in an unrestricted evaluation of what relief would best serve the public." *United States* v. *BNS, Inc.,* 858 F.2d 456, 462 (9th Cir. 1988) (citing *United States* v. *Bechtel Corp.,* 648 F.2d 660, 666 (9th Cir. 1981)); *see also Microsoft,* 56 F.3d at 1460–62. Courts have held that:

[t]he balancing of competing social and political interests affected by a proposed antitrust consent decree must be left, in the first instance, to the discretion of the Attorney General. The court's role in protecting the public interest is one of insuring that the government has not breached its duty to the public in consenting to the decree. The court is required to determine not whether a particular decree is the one that will best serve society, but whether the settlement is "*within the reaches of the public interest.*" More elaborate requirements might undermine the effectiveness of antitrust enforcement by consent decree.

[1] *See United States* v. *Gillette Co.,* 406 F. Supp. 713, 716 (D. Mass. 1975)(recognizing it was not the court's duty to settle; rather, the court must only answer "whether the settlement achieved [was] within the reaches of the public interest"). A "public interest" determination can be made properly on the basis of the Competitive Impact Statement and Response to Comments filed by the Department of Justice pursuant to the APPA. Although the APPA authorizes the use of additional procedures, 15 U.S.C. 16(f), those procedures are discretionary. A court need not invoke any of them unless it believes that the comments have raised significant issues and that further proceedings would aid the court in resolving those issues. See H.R. Rep. No. 93–1463, 93rd Cong., 2d Sess. 8–9 (1974), reprinted in 1974 U.S.C.C.A.N. 6535, 6538–39.

*Bechtel,* 648 F.2d at 666 (emphasis added) (citations omitted).[2]

The proposed Final Judgment, therefore, should not be reviewed under a standard of whether it is certain to eliminate every anticompetitive effect of a particular practice or whether it mandates certainty of free competition in the future. Court approval of a final judgment requires a standard more flexible and less strict than the standard required for a finding of liability. "[A] proposed decree must be approved even if it falls short of the remedy the court would impose on its own, as long as it falls within the range of acceptability or is 'within the reaches of public interests.'" *United States* v. *AT&T Corp.* 552 F. Supp 131, (D.D.C. 1982) (citation omitted) (quoting Gillette, 406 F. Supp. at 716), *aff'd sub nom. Maryland* v. *United States,* 460 U.S. 1001 (1983); see also *United States* v. *Alcan Aluminum Ltd.,* 605 F.Supp. 619, 622 (W.D. Ky. 1985) (approving the consent decree even through the court would have imposed a greater remedy).

Moreover, the Court's role under the APPA is limited to reviewing the remedy in relationship to the violations that the United States has alleged in its Complaint, and *does not* authorize the Court to "construct [its] own hypothetical case and then evaluate the decree against that case." *Microsoft,* 56 F.3d at 1459. Because the "court's authority to review the decree depends entirely on the government's exercising its prosecutorial discretion by bringing a case in the first place," it follows that "the court is only authorized to review the decree itself," and not to "effectively redraft the complaint" to inquire into other matters that the United States did not pursue. *Id.* at 1459–60.

*VIII. Determinative Documents*

There are no determinative materials or documents within the meaning of the APPA that were considered by the United States in formulating the proposed Final Judgment.

Dated: October 20, 2005.

Respectfully submitted,
Jennifer L. Cihon (OH Bar #0068404)
Angela L. Hughes (DC Bar #303420)
John M. Snyder (DC Bar #456921)
Bethany K. Hipp (GA Bar #141678).

[2] *Cf. BNS,* 858 F.2d at 464 (holding that the court's "ultimate authority under the [APPA] is limited to approving or disapproving the consent decree"); *Gillette,* 406 F. Supp. at 716 (noting that, in this way, the court is constrained to "look at the overall picture not hypercritically, nor with a microscope, but with an artist's reducing glass"); see generally *Microsoft,* 56 F.3d at 1461 (discussing whether "the remedies [obtained in the decree are] so inconsonant with the allegations charged as to fall outside of the 'reaches of the public interest'").

**Certificate of Service**

I hereby certify that on October 20, 2005, I caused a copy of the foregoing Competitive Impact Statement to be served on counsel for defendants in this matter in the manner set forth below:

By electronic mail and hand delivery:

Counsel for Defendant Cal Dive International, Inc., Daniel L. Wellington (D.C. Bar #273839), Neely B. Agin (D.C. Bar #456005), Fulbright & Jaworski LLP, 801 Pennsylvania Avenue, NW., Washington, DC 20004–2623, Tel: (202) 662–4574, Fax: (202) 662–4643.

Counsel for Defendants Stolt Offshore S.A., Stolt Offshore, Inc. and S&H Diving LLC, Paul C. Cuomo (D.C. Bar #457793), Sean F. Boland (D.C. Bar #249318), Howrey LLP, 1299 Pennsylvania Avenue, NW., Washington, DC 20004–2402, Tel: (202) 783–0800, Fax: (202) 383–6610.

Jennifer L. Cihon (OH Bar #0068404,

*Department of Justice, Antitrust Division, 325 Seventh Street, NW., Suite 500, Washington, DC 20530, (202) 307–3278, (202) 616–2441 (Fax).*

[FR Doc. 05–21510 Filed 10–28–05; 8:45 am]

**BILLING CODE 4410-11-M**

**DEPARTMENT OF LABOR**

**Office of the Secretary**

**Submission for OMB Review: Comment Request**

October 25, 2005.

The Department of Labor (DOL) has submitted the following public information collection request (ICR) to the Office of Management and Budget (OMB) for review and approval in accordance with the Paperwork Reduction Act of 1995 (Pub. L. 104–13,44 U.S.C. Chapter 35). A copy of this ICR, with applicable supporting documentation, may be obtained by calling the Department of Labor. To obtain documentation contact Ira Mills on 202–693–4122 (this is not a toll-free number) or E-Mail: *Mills.Ira@dol.gov*.

Comments should be sent to Office of Information and Regulatory Affairs, Attn: OMB Desk Officer for ETA, Office of Management and Budget, Room 10235, Washington, DC 20503, 202–395–7316 (this is not a toll free number), within 30 days from the date of this publication in the **Federal Register**.

The OMB is particularly interested in comments which:

• Evaluate whether the proposed collection of information is necessary for the proper performance of the functions of the agency, including

**<u>EXHIBIT B</u>**

Ad # 175783  Name US DEPT OF JUSTICE/ANTI TRUS    Size 62 lines                M0085
Class  815'  PO # PO 5044 Authorized by MAURA LEE  Account 632270

PROOF OF PUBLICATION

District of Columbia, ss., Personally appeared before me, a Notary Public in and for the
said District, Kate M. Davey well known to me to be Billing Manager
of The Washington Post, a daily newspaper published in the City of Washington,
District of Columbia, and making oath in due form of law that an advertisement containing
the language annexed hereto was published in said newspaper on the dates mentioned in the
certificate herein.

I Hereby Certify that the attached advertisement was published in
The Washington Post, a daily newspaper, upon the following dates at a cost of $3,825.40,
and was circulated in the Washington metropolitan area.

Published 7 times. Dates: Oct 24, 25, 26, 27, 28, 29 and 30, 2005
Account 632270

Witness my hand and official seal this _____ day of _____ 20 __

My Commission expires

Tuesday T. Bell
Notary Public, District of Columbia
My Commission Expires 7-31-2009

U.S. DEPARTMENT OF JUSTICE
ANTITRUST DIVISION
Take notice that a proposed Final Judgment has been filed in a civil antitrust
case, United States of America v. Cal Dive International, Inc. et al., Civil No.
1:05CV02041. On October 18, 2005, the United States filed a Complaint
alleging that the proposed acquisition by Cal Dive International of certain
diving assets of Stolt Offshore, Inc. and S&H Diving, LLC would violate Section
7 of the Clayton Act, 15 U.S.C. § 18. The Complaint alleges that the
acquisition would substantially reduce competition in the market for
saturation diving services in the United States Gulf of Mexico. The proposed
Final Judgment, filed at the same time as the Complaint, requires Cal Dive to
divest two vessels and a separate saturation diving system. A Competitive
Impact Statement filed by the United States describes the Complaint, the
proposed Final Judgment, the industry, and the remedies available to private
litigants who may have been injured by the alleged violation.
Copies of the Complaint, proposed Final Judgment, Hold Separate
Stipulation and Order, and Competitive Impact Statement are available for
inspection at the Department of Justice, Antitrust Division, Antitrust
Documents Group, 325 7th Street, N.W., Room 215, Washington, D.C. 20530
(telephone: 202-514-2481), on the Department of Justice's Web site at
http://www.usdoj.gov/atr, and at the Office of the Clerk of the United States
District Court for the District of Columbia.
Interested persons may address comments to Donna N. Kooperstein, Chief,
Transportation, Energy & Agriculture Section, Antitrust Division, Department
of Justice, 325 7th Street, N.W., Suite 500, Washington, DC 20530 (telephone:
202-307-6349), within 60 days of the date of this notice.

## CERTIFICATE OF SERVICE

I hereby certify that on January 6, 2006, I caused a copy of the foregoing United States'

Certificate of Compliance with Provisions of the Antitrust Procedures and Penalties Act to be

served by electronic mail to counsel for defendants listed below:


Counsel for Defendant Cal Dive International, Inc.
Daniel L. Wellington  (D.C. Bar #273839)
Neely B. Agin (D.C. Bar #456005)
Fulbright & Jaworski LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2623
Tel: (202) 662-4574
Fax: (202) 662-4643

Counsel for Defendants Stolt Offshore S.A., Stolt Offshore, Inc.
and S&H Diving LLC
Paul C. Cuomo (D.C. Bar #457793)
Sean F.X. Boland (D.C. Bar #249318)
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, D.C.  20004-2402
Tel: (202) 783-0800
Fax: (202) 383-6610

Jennifer L. Cihon (OH Bar #0068404)
Department of Justice
Antitrust Division
325 Seventh Street, N.W.
Suite 500
Washington, DC  20530
(202) 307-3278
(202) 616-2441 (Fax)