**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| *Plaintiff,* | ) ) | Case No. 1:05CV02041 |
| | ) | Judge: Emmet G. Sullivan |
| v. | ) | Deck Type: Antitrust |
| | ) | Filed: February 13, 2006 |
| CAL DIVE INTERNATIONAL, INC., | ) | |
| STOLT OFFSHORE S.A., | ) | |
| STOLT OFFSHORE, INC., and | ) | |
| S&H DIVING, LLC, | ) | |
| | ) | |
| *Defendants.* | ) ) | |

## AFFIDAVIT OF JENNIFER L. CIHON

I, Jennifer L. Cihon, do depose and say:

1.    I am an attorney with the United States Department of Justice, Antitrust Division, assigned to this matter. I make this affidavit in support of the Motion of the United States for Appointment of Judge Louis M. Phillips as Trustee ("Motion for Appointment").

2.    This Court entered the Final Judgment in this case on January 11, 2006.

3.    Plaintiff's Motion for Appointment is made pursuant to Section V of the Final Judgment in this case.

4.    The facts set forth in the Plaintiff's Memorandum in Support of Motion of the United States for Appointment of Trustee are true and accurate to the best of my belief and knowledge.

5.    A copy of the Final Judgment, a copy of Judge Phillips' resume and a copy of the

brochure for Gordon, Arata, McCollam, Duplantis & Eagan, LLP are attached hereto.

6.    I declare under penalty of perjury that the foregoing is true and correct.


Jennifer L. Cihon (OH Bar # 0068404)
Transportation, Energy & Agriculture Section
Antitrust Division
U.S. Department of Justice
325 7th Street, N.W. Suite 500
Washington, D.C. 20530
(202) 307-3278


Subscribed and sworn to before me
this day of February 13, 2006


Notary Public
My commission expires May 14, 2009.

2

# ATTACHMENT A

FILED

JAN 1 2 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| *Plaintiff,* ) | Case No. 1:05CV02041 |
| ) | Judge: Emmet G. Sullivan |
| v. ) | Deck Type: Antitrust |
| ) | Filed: October 27, 2005 |
| CAL DIVE INTERNATIONAL, INC., ) | |
| STOLT OFFSHORE S.A., ) | |
| STOLT OFFSHORE, INC., and ) | |
| S&H DIVING, LLC, ) | |
| ) | |
| *Defendants.* ) | |

## AMENDED PROPOSED FINAL JUDGMENT

WHEREAS, plaintiff, United States of America, filed its Complaint on October 18, 2005,

plaintiff and defendants, by their respective attorneys, have consented to the entry of this Final

Judgment without trial or adjudication of any issue of fact or law, and without this Final

Judgment constituting any evidence against or admission by any party regarding any issue of

fact or law;

AND WHEREAS, the defendants have stipulated solely for purposes of this action that

the Court has personal jurisdiction over the defendants;

AND WHEREAS, the defendants agree to be bound by the provisions of this Final

Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain

divestiture of a saturation diving system and diving support vessels by defendant Cal Dive to

assure that competition is not substantially lessened;

AND WHEREAS, the United States requires defendant Cal Dive to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, the defendants have represented to the United States that the divestiture required below can and will be made and that the defendants will later raise no claim of hardship or difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED AND DECREED:

## I.

## JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against the defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II.

## DEFINITIONS

As used in this Final Judgment:

A.     "Acquirer" or "Acquirers" means the entity or entities to whom defendant Cal Dive divests the Saturation Diving Assets.

B.     "Cal Dive" means Cal Dive International, Inc., a corporation organized and existing under the laws of the state of Minnesota with its headquarters in Houston, Texas, its successors and

2

assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, joint ventures, and their

directors, officers, managers, agents, and employees.

C.    "Person" means any natural person, corporation, association, firm, partnership, or other

business or legal entity.

D.    "Saturation Diving Assets" means the vessel designated as the Seaway Defender, the

vessel designated as the Midnight Carrier, and the saturation diving system designated as the

Torch Saturation Diving System.

E.    "Stolt" means Stolt Offshore S.A., a Luxembourg registered company, its United States

subsidiary, Stolt Offshore, Inc., a corporation organized and existing under the laws of the state of

Louisiana, with headquarters in Houston, Texas, and S&H Diving LLC, a Louisiana limited

liability company with offices in Houston, Texas.

F.    "Torch Saturation Diving System" means the portable saturation diving system that Cal

Dive purchased from Torch Offshore, Inc. that has six major components: a four-man single lock

saturation chamber, a transfer lock (TUP), a two-man diving bell, a main umbilical, a control van,

and a supply van.

### III.

### APPLICABILITY

This Final Judgment applies to the defendants, Cal Dive and Stolt, and all other persons in

active concert or participation with any of them who receive actual notice of this Final Judgment

by personal service or otherwise.

### IV.

### DIVESTITURE

3

A.    Defendant Cal Dive is hereby ordered and directed (1) to divest the Torch Saturation Diving System and the vessel designated as the Midnight Carrier within sixty (60) calendar days after the date of filing of the Complaint in this matter, or within five (5) days after notice of the entry of this Final Judgment by the Court, whichever is later; and (2) to divest the vessel designated as the Seaway Defender within ninety (90) calendar days after the date of the filing of the Complaint in this matter, or within five (5) days after notice of the entry of this Final Judgment by the Court, whichever is later. The divestitures must be made in a manner consistent with this Final Judgment to an Acquirer or Acquirers acceptable to the United States in its sole discretion. The United States, in its sole discretion, may agree to extend each time period up to thirty (30) calendar days, and shall notify the Court in such circumstances. Defendant Cal Dive agrees to use its best efforts to divest the Saturation Diving Assets as expeditiously as possible.

B.    In accomplishing the divestiture ordered by this Final Judgment, defendant Cal Dive promptly shall make known, by usual and customary means, the availability of the Saturation Diving Assets. Defendant Cal Dive shall inform any person making inquiry regarding a possible purchase of the Saturation Diving Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment. The defendants shall offer to furnish to each prospective Acquirer, subject to customary confidentiality assurances, all information and documents relating to the Saturation Diving Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client or work-product privileges. The defendants shall make available such information and documents to the United States at the same time that such information and documents are made available to any other person.

4

C.      The defendants shall provide to each Acquirer of some or all of the Saturation Diving

Assets, and to the United States, the name and current contact information (if known) for each

individual who is currently, or who, to the best of the defendants' knowledge, has been involved

at any time since June 1, 2004, whether onshore or offshore, in the operation of the specific

Saturation Diving Assets to be acquired by the Acquirer or in the provision of diving services by

or with any of the specific Saturation Diving Assets to be acquired by the Acquirer, including

divers, diving tenders, and diving supervisors or superintendents. The defendants shall not

impede or interfere with any negotiations by the Acquirer or Acquirers to employ any person who

has worked with, or whose principal responsibilities have concerned, any of the Saturation Diving

Assets.

D.      Consistent with customary due diligence processes and subject to customary

confidentiality assurances, the defendants shall permit each prospective Acquirer of some or all

Saturation Diving Assets to have reasonable access to personnel and to make inspections of the

Saturation Diving Assets; access to any and all environmental and other permit documents and

information; and access to any and all financial, operational, or other documents and information.

E.      Defendant Cal Dive also agrees to divest the Saturation Diving Assets in a condition and

state of repair equal to their condition and state of repair as of the date Cal Dive acquires them,

ordinary wear and tear excepted.

F.      The defendants will not undertake, directly or indirectly, any challenges to any permits or

certifications relating to the operation of the Saturation Diving Assets, or otherwise take any

action to impede the divestiture or operation of the Saturation Diving Assets.

5

G.    The divestiture of the Saturation Diving Assets shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Saturation Diving Assets will be operational or made operational by the Acquirer or Acquirers, will be used by the Acquirer or Acquirers as part of a viable, ongoing business engaged in the provision of saturation diving services in the United States Gulf of Mexico, and will remedy the competitive harm alleged in the Complaint. The divestiture, whether pursuant to Section IV or Section V of this Final Judgment:

1.    shall be made to an Acquirer or Acquirers that, in the United States's sole judgment, has the intent and capability (including the necessary operational, technical, and financial capability) to compete effectively in the saturation diving business in the United States Gulf of Mexico; and

2.    shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between the Acquirer or Acquirers and defendant Cal Dive gives the defendants the ability unreasonably to raise the Acquirer's or Acquirers' costs, to lower the Acquirer's or Acquirers' efficiency, or otherwise to interfere in the ability of the Acquirer or Acquirers to compete effectively.

## V.

### APPOINTMENT OF TRUSTEE

A.    If defendant Cal Dive has not divested the Saturation Diving Assets within the time period specified in Section IV(A), defendant Cal Dive shall notify the United States of that fact in writing. Upon application of the United States, in its sole discretion, the Court shall appoint a trustee selected by the United States and approved by the Court to effect the divestiture of the Saturation Diving Assets.

6

B.    After the appointment of a trustee becomes effective, only the trustee shall have the right to sell the Saturation Diving Assets. The trustee shall have the power and authority to accomplish the divestiture to an Acquirer or Acquirers acceptable to the United States, in its sole discretion, at such price and on such terms as are then obtainable upon reasonable effort by the trustee, subject to the provisions of Sections IV, V, and VI of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Section V(D) of this Final Judgment, the trustee may hire at the cost and expense of defendant Cal Dive any investment bankers, attorneys, or other agents, who shall be solely accountable to the trustee, reasonably necessary in the trustee's judgment to assist in the divestiture.

C.    The defendants shall not object to a sale of the Saturation Diving Assets by the trustee on any ground other than the trustee's malfeasance. Any such objections by the defendants must be conveyed in writing to the United States and the trustee within ten (10) calendar days after the trustee has provided the notice required under Section VI.

D.    The trustee shall serve at the cost and expense of defendant Cal Dive, on such terms and conditions as the United States approves, and shall account for all monies derived from the sale of the Saturation Diving Assets and for all costs and expenses so incurred. After approval by the Court of the trustee's accounting, including fees for its services and those of any professionals and agents retained by the trustee, all remaining money shall be paid to defendant Cal Dive and the trust shall then be terminated. The compensation of the trustee and any professionals and agents retained by the trustee shall be reasonable in light of the value of the Saturation Diving Assets and based on a fee arrangement providing the trustee with an incentive based on the price

7

and terms of the divestiture and the speed with which it is accomplished, but timeliness is paramount.

E.      The defendants shall use their best efforts to assist the trustee in accomplishing the required divestiture. The trustee and any consultants, accountants, attorneys, and other persons retained by the trustee shall have full and complete access to the Saturation Diving Assets and the personnel, books, and records of the Saturation Diving Assets, and defendant Cal Dive shall develop financial and other information relevant to the Saturation Diving Assets as the trustee may reasonably request, subject to reasonable protection for trade secret or other confidential research, development, or commercial information. The defendants shall take no action to interfere with or to impede the trustee's accomplishment of the divestiture.

F.      After its appointment, the trustee shall file monthly reports with the United States and the Court setting forth the trustee's efforts to accomplish the divestiture ordered under this Final Judgment. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, the Saturation Diving Assets and shall describe in detail each contact with any such person. The trustee shall maintain full records of all efforts made to divest the Saturation Diving Assets.

G.      If the trustee has not accomplished such divestiture within six (6) months after its appointment, the trustee shall promptly file with the Court a report setting forth (1) the trustee's efforts to accomplish the required divestiture; (2) the reasons, in the trustee's judgment, why the

8

required divestiture has not been accomplished; and (3) the trustee's recommendations. To the extent such reports contain information that the trustee deems confidential, such reports shall not be filed in the public docket of the Court. The trustee shall at the same time furnish such report to the United States who shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Final Judgment, which may, if necessary, include, without limitation, extending the trust and the term of the trustee's appointment by a period requested by the United States.

<div align="center">VI.</div>

<div align="center">NOTICE OF PROPOSED DIVESTITURE</div>

A.      Within two (2) business days following execution of a definitive divestiture agreement, defendant Cal Dive or the trustee, whichever is then responsible for effecting the divestiture required herein, shall notify the United States of any proposed divestiture required by Section IV or V of this Final Judgment. If the trustee is responsible, it shall similarly notify defendant Cal Dive. The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who offered or expressed an interest in or desire to acquire the Saturation Diving Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from the defendants, the proposed Acquirer or Acquirers, any other third party, or the trustee if applicable, additional information concerning the proposed divestiture, the proposed Acquirer or Acquirers and any other potential Acquirer or Acquirers. The defendants

<div align="center">9</div>

and the trustee shall furnish any additional information requested within fifteen (15) calendar

days of the receipt of the request, unless the parties shall otherwise agree.

C.    Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar

days after the United States has been provided the additional information requested from the

defendants, the proposed Acquirer or Acquirers, any third party, and the trustee, whichever is

later, the United States shall provide written notice to defendant Cal Dive and the trustee, if there

is one, stating whether or not it objects to the proposed divestiture.  If the United States provides

written notice that it does not object, the divestiture may be consummated, subject only to

defendants' limited right to object to the sale under Section V(C) of this Final Judgment.  Absent

written notice that the United States does not object to the proposed Acquirer or Acquirers or

upon objection by the United States, a divestiture proposed under Section IV or Section V shall

not be consummated.  Upon objection by the defendants under Section V(C), a divestiture

proposed under Section V shall not be consummated unless approved by the Court.

## VII.

## FINANCING

The defendants shall not finance all or any part of any purchase made pursuant to Section

IV or V of this Final Judgment.

## VIII.

## HOLD SEPARATE

Until the divestiture required by this Final Judgment has been accomplished, the

defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order

10

entered by this Court. The defendants shall take no action that would jeopardize, delay, or impede the divestiture order by this Court.

## IX.

### AFFIDAVITS

A.    Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestiture has been completed under Section IV or V, the defendants shall deliver to the United States an affidavit that describes the fact and manner of their compliance with Section IV or V of this Final Judgment. Each such affidavit shall include the name, address, and telephone number of each person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring any or all of the Saturation Diving Assets, and shall describe in detail each contact with any such person during that period. Each such affidavit shall also include a description of the efforts defendant Cal Dive has taken to solicit buyers for the Saturation Diving Assets, and to provide required information to any prospective Acquirer or Acquirers, including the limitations, if any, on such information. Assuming the information set forth in the affidavit is true and complete, any objection by the United States to information provided by the defendants, including limitations on the information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.    Within twenty (20) calendar days of the filing of the Complaint in this matter, the defendants shall deliver to the United States an affidavit that describes in reasonable detail all actions the defendants have taken and all steps the defendants have implemented on an ongoing basis to comply with Section VIII of this Final Judgment. The defendants shall deliver to the

11

United States an affidavit describing any changes to the efforts and actions outlined in the
defendants' earlier affidavits filed pursuant to this section within fifteen (15) calendar days after
the change is implemented.

C.       Defendant Cal Dive shall keep all records of all efforts made to preserve and to divest the
Saturation Diving Assets until one year after such divestiture has been completed.

## X.

### COMPLIANCE INSPECTIONS

A.       For purposes of determining or securing compliance with this Final Judgment, or of
determining whether the Final Judgment should be modified or vacated, and subject to any legally
recognized privilege, from time to time duly authorized representatives of the United States
Department of Justice, including consultants and other persons retained by the United States,
shall, upon written request of a duly authorized representative of the Assistant Attorney General
in charge of the Antitrust Division, and on reasonable notice to the defendants, be permitted:

      1.       access during the defendants' office hours to inspect and copy, or at the United
States' option, to require the defendants to provide copies of, all books, ledgers, accounts, records
and documents in the possession, custody, or control of the defendants, relating to any matters
contained in this Final Judgment; and

      2.       to interview, either informally or on the record, the defendants' officers,
employees, or agents, who may have their individual counsel present, regarding such matters.
The interviews shall be subject to the reasonable convenience of the interviewee and without
restraint or interference by the defendants.

12

B.     Upon the written request of a duly authorized representative of the Assistant Attorney General in charge of the Antitrust Division, the defendants shall submit written reports, or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.     No information or documents obtained by the means provided in this section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.     If at the time information or documents are furnished by the defendants to the United States, the defendants represent and identify in writing the material in any such information or documents to which a claim of protection may be asserted under Rule 26(c)(7) of the Federal Rules of Civil Procedure, and the defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(7) of the Federal Rules of Civil Procedure," then the United States shall give the defendants ten (10) calendar days notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.

## NOTIFICATION

Unless such transaction is otherwise subject to the reporting and waiting period requirements of the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, 15 U.S.C. § 18a, for three years after entry of this Final Judgment, defendant Cal Dive, without

13

providing advance notification to the Department of Justice, shall not directly or indirectly

acquire any saturation chamber that, to the best of Cal Dive's knowledge, has been

operated in or located in the United States Gulf of Mexico at any time since October 1, 2002,

whether as part of a portable saturation diving system or as part of saturation diving system built

into a vessel, or any interest, including any financial, security, loan, equity or management

interest in, any company that owns or operates such a saturation chamber.  Such notification shall

be provided to the Department of Justice in the same format as, and per the instructions relating

to, the Notification and Report Form set forth in the Appendix to Part 803 of Title 16 of the Code

of Federal Regulations as amended.  Notification shall be provided at least thirty (30) calendar

days prior to the acquisition, and shall include, beyond what may be required by the applicable

instructions, the names of the principal representatives of the parties to the agreement who

negotiated the agreement, and any management or strategic plans discussing the proposed

transaction.

## XII.

## NO REACQUISITION

Defendant Cal Dive may not reacquire any of the Saturation Diving Assets during the

term of this Final Judgment.

## XIII.

## RETENTION OF JURISDICTION

This Court retains jurisdiction to enable any party to this Final Judgment to apply to this

Court at any time for further orders and directions as may be necessary or appropriate to carry out

14

or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

### XIV.

### EXPIRATION OF FINAL JUDGMENT

Unless this Court grants an extension, this Final Judgment shall expire ten years from the date of its entry.

### XV.

### PUBLIC INTEREST DETERMINATION

For the reasons set forth in the Competitive Impact Statement that has been filed with the Court and that has been made available for public comment, entry of this Final Judgment is in the public interest, and the parties have complied with the procedures of the Antitrust Procedures and Penalties Act, 15 U.S.C. § 16.

Dated: 1/11/0C

United States District Judge

15

# ATTACHMENT B

Resume of:
Louis M. Phillips
Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P.
One American Place
301 Main Street, Suite 1600
Baton Rouge, Louisiana  70825-0004
Phone: (225) 381-9643
Fax No.: (225) 336-9763
E-mail: lphillips@gordonarata.com


Louis M. Phillips is a partner in the law firm Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P., where he is the leader of the firm's Insolvency and Bankruptcy Practice Group.  He provides legal representation and consultation for debtors, creditors, and trustees over a broad practice area, including transaction and business structuring and restructuring, bankruptcy reorganization, property sales, asset financing, and bankruptcy and commercial litigation.

He was the United States Bankruptcy Judge for the Middle District of Louisiana from May, 1988 through May, 2002. During his tenure, he authored numerous opinions of first impression of Louisiana state law and bankruptcy law, and was the author of a number of opinions that ultimately were adopted by the Fifth Circuit and other courts as the law of those courts. He also presided over the first conversion to a totally electronic filing and docketing system within the Federal Courts of the United States.

He currently serves as an Adjunct Professor of Law at the Louisiana State University Law Center, a position he has held since 1988, and is the permanent chair of the annual Bankruptcy Law Seminar sponsored by the Louisiana State University Center for Continuing Professional Development, a program he developed and has chaired since 1995.

He has been a contributing editor to the Norton Bankruptcy Law and Practice 2nd, and is the author of numerous articles for law reviews and other periodicals, including Fifth Circuit Symposium: Bankruptcy, 35 Loy. L. Rev. 715 (1989); Developments in the Law: Bankruptcy, 54 La. L. Rev. 599 (1994); and Ruminations on Property of the Estate: Does Anyone Know Why a Debtor's Postpetition Earnings, Generated by Her Own Earning Capacity, Are Not Property of the Bankruptcy Estate?, 58 La. L. Rev. 623 (1998).

He is also a frequent speaker and writer for legal education seminars across the country, including seminars presented by or in conjunction with Stetson University College of Law, University of Missouri-Kansas City School of Law, Texas Tech School of Law, Norton Institutes on Bankruptcy Law, American Bankruptcy Institute, National Association of Bankruptcy Trustees, National Association of Chapter 13 Trustees, Mississippi Bankruptcy Conference, Southeastern Bankruptcy Law Institute, American Bar Association, the bar associations of Louisiana, Ohio, Oregon, Tennessee, Washington and Wisconsin, numerous federal district bar associations, National Association of Attorneys General, States' Association of Bankruptcy Attorneys, National Association of Consumer Bankruptcy Attorneys, and VISA International. He has also taught educational programs on bankruptcy law for state judges.

# **ATTACHMENT C**





GORDON
ARATA
McCOLLAM
DUPLANTIS &
EAGAN LLP
ATTORNEYS AT LAW



NEW ORLEANS OFFICE
201 ST. CHARLES AVENUE
40TH FLOOR
NEW ORLEANS, LA  70170-4000
504.582.1111
FAX  504.582.1121

BATON ROUGE OFFICE
1400 ONE AMERICAN PLACE
BATON ROUGE, LA  70825-0012
225.381.9643
FAX  225.336.9763

LAFAYETTE OFFICE
625 EAST KALISTE SALOOM ROAD
SUITE 301
LAFAYETTE, LA  70508-2508
337.237.0132
FAX  337.237.3451

WWW.GAMDE.COM

Our firm was founded in 1970
by three extraordinary lawyers
who shared an uncommon vision
about how to practice law.
Two of the three had
significant experience
in public service:
Blake Arata,
as New Orleans City Attorney,
and Jack Gordon,
as counsel to the Orleans Parish
Sewerage and Water Board.
The third, John McCollam,
hailed from an extremely varied
private practice, encompassing
both litigation and transactions,
and also taught mineral law
at Tulane Law School.
All three had ties to the energy industry.

Each applied his unique strengths
and developed his unique
contacts to grow the firm.
From the start,
they believed that a small firm
of highly talented and personable lawyers
could deliver excellent legal services,
even in the most complex matters,
at a competitive price
and with a human face.



# THE FIRM



*Jack Gordon*

*Blake Arata*

*John McCollam*

"When we formed the firm, we wanted to work hard and be fresh and aggressive and show that we were standouts – that was our vision," recalls John McCollam. Over thirty years later, this spirited attitude still prevails in our practice.

What's the best thing we have to offer clients? According to McCollam, "It's our focus. Consistently high quality work, always keeping the clients' best interests in mind. In litigation, that means staying a step ahead of your opposition and not simply reacting to his first salvo. My theory is to look at a case, develop a plan of action, and stay ahead of the curve. You don't have to be a giant firm to do that. And you can do it a lot cheaper. So the client gets better representation for less money." This simple idea has helped us to grow into a full service law firm, serving businesses and individuals.

Our work has always been imbued with the character of our lawyers: intelligent, imaginative, upbeat, responsive, attentive. Serious, but not stuffy or aloof. And, above all, principled. Always taking the high road. Jack Gordon explains: "We found three guys in sync in a lot of ways, and the three of us figured out that we had the right mix to start a successful law firm. Over the years,



*Duplantis*

*Tim Eagan*

that has proved correct. We had ideas about where we wanted to go, how big we wanted to be, and what kind of law we wanted to practice.

"But we also wanted our practice to reflect a certain attitude. What clients are looking for is excellent, reliable, reasonably priced legal advice. I also believe that most clients give serious consideration to the personal qualities of attorneys. By this I mean compatibility and accessibility, particularly accessibility. I believe we successfully impress this upon each young attorney joining our firm."

Tim Eagan, now the firm's managing partner, says that he was initially drawn to the firm because its lawyers "have exceptional academic backgrounds but are not stodgy or self-important. The firm is a gathering of professionals, not simply technicians. There is a remarkable diversity of work and expertise that is greater than one would expect in a firm of this size."

We're proud of our firm culture. We think it sets us apart from the crowd. We think it promotes better, more personal and more responsive services for our clients. As Blake Arata observes, "We've been very fortunate over the years, bringing in and retaining superbly talented people who share our unique vision for the practice of law."



# OUR OFFICES

The firm has three offices, in New Orleans, Lafayette and Baton Rouge. Our lawyers possess a wide array of specialties and are organized for administrative purposes into three sections: commercial litigation, transactions, and oil and gas.

Baton Rouge partner Teanna Neskora quips: "We'd never forget our satellite office in New Orleans. Seriously, though, I hope we can convey to our clients that the geographic distance between the three offices is not a barrier to anything we have to do on the clients' behalf. We look to the expertise of the lawyers when we staff a project, no matter which office they're in. For example, a transactions project will frequently be staffed from all three offices. We work well together, and technology makes that easier."





Lafayette partner Bob Duplantis notes that "each office and section works well with the others because we think of ourselves as one group. For example, the Lafayette office recently handled a transaction with bankruptcy implications, so we availed ourselves of that expertise in the New Orleans office. There's a symbiotic relationship among our lawyers."

Integration of practice areas and offices is an important asset because a legal representation can take twists and turns demanding rapid response from lawyers with varied specialties. We have the



depth and experience to handle big cases and big deals. We're proud of the complex and high-profile matters we've handled.

We're also proud of our responsiveness and our personal touch, which every client gets on every file. A few examples will show what we mean.



# OUR WORK

**_Commercial Litigation_**

The firm routinely handles complex and high profile commercial litigation. A good example of the firm's commercial litigation work is our extensive trial and appellate practice for Lorillard Tobacco Company in both individual smoking and health cases as well as in class action matters. Litigation partner Steve Copley, who spearheads these cases, recalls: "Lorillard picked us because of the people who work here and their experience in complex civil litigation. We have talent from senior litigation counsel, like John McCollam and Tim Eagan, down to incoming associates, all of whom can bring to bear their smarts and experience on short notice. Our senior counsel are recognized by the American College of Trial Lawyers, and our associates stack up against those at any firm in the country. Our lawyers are in the courthouse every week. We're active in mock trials and teaching."



*Steve*
*Copley*



*Donna*
*Currault*

*Tim*
*Eagan*

Offering another example of our litigation practice, Partner Donna Currault fondly remembers her work defending two nationwide class actions, filed in Louisiana, against Charles Schwab & Co., Inc. alleging that Schwab wrongfully failed to disclose to customers its receipt of order flow payments and also violated its duty of best execution. "It was a great experience. The case was complicated and, at times, convoluted. Every strategic decision had to consider the implications for parallel cases filed all over the country by the consortium of plaintiffs' lawyers, for whom Louisiana ultimately became the favored forum. We also worked with defense counsel in New York, Chicago and Washington, D.C. because of similar litigation in their areas."

Currault particularly cited the work of lead counsel, partner Tim Eagan. "Tim is a great lawyer. He often took other people's briefs, many times on abstruse issues, and made them snappy and compelling. He sometimes seems to absorb material as if by osmosis and would quote it from memory during oral argument. He's also good at reading people and seeing where they're going. He incorporates those verbal and nonverbal cues into his advocacy."

## *Oil and Gas*

*H* istorically, oil and gas industry clients have been an integral part of the firm's practice. In legal circles and in the industry, founding partner John McCollam is synonymous with oil and gas, having authored the seminal article analyzing the Louisiana Mineral Code and also having taught basic and advanced mineral law for more than twenty years at Tulane Law School. Similarly, Bob Duplantis, a petroleum chemical engineer and longtime engineer and lawyer with Shell Oil Company before heading up the firm's Lafayette office, is one of the preeminent unitization lawyers in Louisiana. Our other oil and gas lawyers have varied backgrounds. Some are trained in geophysics and geology; others hail from nontechnical backgrounds. Litigation partner Scott O'Connor observes, "Our oil and gas lawyers are a talented and multidimensional group; they look for new and creative ways to represent oil and gas clients in litigation and in transactions."



*Scott
O'Connor*

O'Connor and fellow oil and gas partner Peck Hayne cite their recent work on consolidated cases involving complex contracts relating to the production and sale of natural gas from federal leases located on the Outer Continental Shelf. Our client had potential exposure to damages in excess of a billion dollars. Once the dispute became evident, a critical threshold issue was the selection of the forum in which the resulting litigation should be prosecuted. John McCollam was summoned to Houston to discuss this and other issues. John recommended that our client immediately file suit for declaratory relief in federal court in New Orleans as a preemptive strike. Our client quickly accepted this advice, and O'Connor and Hayne drafted the necessary pleadings.





Peck
Hayne



O'Connor remembers : "The most impressive dynamic of the meeting was that the client was immediately comfortable with John's advice on this. Based on his advice, we were immediately authorized to begin drafting the necessary pleadings and instructed to file suit that same day." The opposition later filed suits (on the very next day) in Houston and Lafayette, but their suits were dismissed or transferred to the New Orleans court. "We managed to stay a step ahead of the opposition throughout the ensuing litigation," says O'Connor, and that ultimately resulted in a favorable decision.

A particularly creative facet of the firm's work that led to summary judgment in favor of our client was the use of two prominent Louisiana law professors as expert witnesses, who gave affidavits in support of the client's summary judgment motion, explaining why our opponent's position on contract construction offended the Louisiana Civil Code.

As Peck Hayne recalls, "The summary judgment motion prevailed; and while courts don't usually entertain expert testimony on pure legal

issues, it seems likely that both the district and appellate courts were influenced by what these law professors had to say."

O'Connor observes: "This representation solidified in my mind the importance of putting together a litigation team that comprises firm lawyers and client personnel, particularly when it's imperative that things get done quickly and correctly. In litigation of this magnitude, the pace is fast and furious. Because the client's and our teams worked closely together, we were always on the same page for case strategy."



*Greg Grimsal*

***Transactions***

A New Orleans institution, Avondale Shipyards, the largest private employer in the metropolitan area, followed Howard Sinor to the firm when he joined in 1999. Howard had assisted Avondale on antitrust matters for a number of years. After coming aboard at the firm, he continued to advise Avondale about a critical transactional matter, specifically, whether its proposed merger with Newport News Shipbuilding, Inc. might pose antitrust problems.

Once the terms of the deal with Newport News were agreed upon, Howard and other lawyers in the firm worked with Avondale management in presentations to representatives of the Departments of Justice and Defense (the United States Navy being Avondale's principal customer), highlighting the benefits of the proposed merger for competition and for defense readiness.



However, even as these efforts were met with success, complications arose. First, General Dynamics (owner of three major shipyards) announced an unsolicited offer to acquire Newport News – an offer that specifically excluded Avondale.

Quickly shifting focus, the firm assisted Avondale in analyzing this proposed transaction for the same Justice and Defense Department officials, who ultimately endorsed Avondale's position that the General Dynamics acquisition should not be approved.

In a further twist, Litton Industries, the owner of Ingalls Shipyards, made an unsolicited



offer to acquire both Avondale and Newport News. When Avondale's board ultimately voted to accept the Litton offer, the firm again helped Avondale to make presentations to the (by now bemused) officials at the Departments of Justice and Defense, this time supporting a merger with Litton.

These efforts were also successful, and Avondale merged with Litton effective August 1, 1999.





*Howard Sinor*

Looking back on an exciting seven months, Howard Sinor observes: "The matter was unique in my experience both because of its roller coaster quality and also because of the central involvement of the Pentagon. Working with very knowledgeable Avondale personnel, the firm drew on its resources to study and statistically analyze American shipbuilding and its critical role in the nation's defense."

Transactions partner Marion Weinstock notes that the firm has handled many transactions for community banks. In particular, she recalls a representation where the firm assisted a community bank with an interim bank merger transaction which enabled it to be taxed as a Subchapter S Corporation.





*Marion Welborn Weinstock*

"When we made the application to the FDIC for approval of the merger, we learned that fewer than a handful of banks around the country had successfully completed a Subchapter S conversion," Marion stated. "This matter was especially exciting – not only because it was on the cutting edge but also because it required a quick response to the bank's needs as well as to a bevy of problems that surfaced during the process."

The matter required a depth and breadth of knowledge, with our attorneys advising the bank and its board of directors on alternate structures, preparing the proxy statement and offering memorandum for the annual meeting of its shareholders where the merger would be voted on, securing the fairness opinion from an investment banking firm, preparing the bank for possible challenges to the transaction and assisting the bank in responding to questions from its shareholders. In short, our handling of the conversion and the regulatory process enabled the bank to remain competitive and benefit their shareholders at the same time, which was their objective. The firm's transactional attorneys provide aggressive, skillful and individualized advice to clients with a wide range of needs and concerns.



# QUALITY, DEPTH & YOUR
# PHONE CALLS RETURNED

*B*aton Rouge partner Teanna Neskora looks back on her
early practice: "We knew we'd have to generate business
in Baton Rouge, which was then a relatively small office.
So we focused on small business start-ups. We succeeded
in bringing them in and nurturing them. We know that
we can handle the biggest corporate clients. But it's our
experience that we can also help small business clients, see
them grow, and then take them a step further. We're
capable of handling clients from the smallest to the largest.

"I handle trusts and estates, and some of my work
is spun off from business clients, so you have personal and
business planning intertwined. On any given day, I'll get
a phone call from a Houston oil company with a corporate
matter to handle. Then I'll get a call from an eighty-five
year old woman about an estate planning matter. I think



all of our lawyers bring a competence and
a very refined touch to all those different
kinds of clients who need help. We've
helped lots of different clients in lots of
different ways. We always have, and we
always will."

*Teanna West*
*Neskora*

# PRACTICE AREAS



GORDON
ARATA
McCOLLAM
DUPLANTIS
EAGAN LLP
ATTORNEYS AT LAW

- **ANTITRUST AND TRADE REGULATION**
- **BANKRUPTCY**
- **CLASS ACTION PRACTICE**
- **COMMERCIAL LITIGATION**
- **CORPORATE AND SECURITIES LITIGATION**
- **CORPORATE AND SECURITIES TRANSACTIONS**
- **EMPLOYMENT LAW**
- **ENERGY PRACTICE**
- **ENVIRONMENTAL LAW**
- **HEALTHCARE LAW**
- **INSURANCE PRACTICE**
- **INTELLECTUAL PROPERTY**
- **OIL AND GAS TRANSACTIONS AND REGULATORY PRACTICE**
- **PRODUCTS LIABILITY**
- **PUBLIC UTILITIES LAW**
- **REAL ESTATE AND FINANCING**
- **TELECOMMUNICATIONS LAW**
- **TRUSTS, ESTATES AND TAXATION**
- **WHITE COLLAR CRIMINAL DEFENSE**

# ANTITRUST AND TRADE REGULATION

Most business executives are aware of the existence of antitrust laws and generally know that violations carry stiff monetary penalties and the possibility of jail time. However, because the antitrust laws represent a thicket of complex, often arcane, and even apparently contradictory rules, business managers frequently experience anxiety over recognizing and resolving antitrust issues. The attorneys at Gordon Arata who practice antitrust and trade regulation law are highly qualified and experienced in guiding clients through this thicket.

Our attorneys have extensive experience counseling businesses, trade associations, joint ventures, and individuals on antitrust issues and have devised and implemented antitrust compliance programs. While we certainly advise clients on what the law prohibits, we often counsel clients on achieving desired business goals, including joint or coordinated activity, without running afoul of the antitrust laws.

Gordon Arata regularly represents clients in private lawsuits, including class actions and multidistrict suits, arising under federal and state antitrust and unfair competition laws. Our attorneys have represented clients in antitrust investigations by federal regulatory agencies and state attorneys general. Additionally, our attorneys possess significant experience advising clients with respect to the antitrust aspects of mergers, acquisitions, and joint ventures. They have successfully represented clients before the Antitrust Division of the United States Department of Justice and the Federal Trade Commission, and state regulators, as well as in other agency review processes.

# ANTITRUST AND TRADE REGULATION

The partner who leads our antitrust and trade regulation practice possesses over a quarter-century of experience in this area, is former Chairman of the Antitrust Section of the State Bar, and has written and lectured in this field. This practice group includes a number of other attorneys with comparable breadth and depth of experience in this area.

Attorneys practicing in this group include Howard Sinor, Tim Eagan, John McCollam, Steve Copley, Greg Grimsal, Donna Currault, Marcy Massengale, Tina Santopadre, Peck Hayne and Wendy Hickok Robinson.



GORDON
ARATA
McCOLLAM
DUPLANTIS
EAGAN LLP
ATTORNEYS AT LAW

| New Orleans | Lafayette | Baton Rouge |
|---|---|---|
| 504.582.1111 | 337.237.0132 | 225.381.9643 |

# BANKRUPTCY

As more companies and individuals use bankruptcy as a business strategy, it becomes increasingly important for clients to understand the benefits and risks associated with bankruptcy proceedings. The Bankruptcy Code and Rules often require immediate action for clients to preserve their rights and claims, but an impulsive move in the bankruptcy courts can cause the waiver of those same rights and claims. Bankruptcy cases also offer a unique source for asset acquisition that may provide a client with an opportunity to upgrade its equipment or expand its business at bargain-basement prices.

Because of the complexity of the Bankruptcy Code, a comprehensive knowledge of current case law and appreciation of the interrelationship among the provisions of the Code is critical to a successful result in any bankruptcy-related endeavor. Gordon Arata's lawyers have the necessary knowledge and experience to achieve outstanding results for its clients. The firm's lawyers have successfully handled bankruptcy and bankruptcy-related matters for clients involved in all bankruptcy practice areas including:

- Representing debtors and creditors in connection with problem credit, workouts, and Chapter 11 reorganization and liquidation proceedings;

- Representing purchasers of assets from Chapter 11 debtors in possession and from bankruptcy trustees through § 363 sales and through confirmed Chapter 11 plans;

- Representing parties to leases, executory contracts, and license agreements in the context of bankruptcy proceedings;

## BANKRUPTCY

## BANKRUPTCY

- Prosecuting and defending preference, fraudulent conveyance, and other avoidance action proceedings in complex corporate bankruptcies as well as in individual bankruptcies;

- Representing bankruptcy trustees in connection with all aspects of their administration of bankruptcy estates, including sales of property, investigation and prosecution of avoidance actions, prosecution of discharge complaints, objections to exemptions, objections to claims, approvals of compromises, disgorgement actions, and prosecution of substantive consolidation, alter ego, and single business enterprise remedies; and

- Representing vendors in pursuit of reclamation and vendor's lien claims in large and small corporate bankrupties.

Recent experience of the lawyers in the firm includes:

- Representing the Louisiana Gaming Control Board in the Chapter 11 bankruptcy case of the exclusive land-based casino authorized by statute to operate in the State of Louisiana;

- Representing one of the largest creditors (with claims exceeding $200 million) in the Chapter 11 case of a Louisiana electric power cooperative;

- Representing an oil and gas firm in Chapter 11;

- Representing an SEC receiver as administrator and liquidator of multiple bankruptcy estates arising from a massive, nationwide securities fraud scheme; and

- Representing the bankruptcy

trustee in connection with the collapse of one of the largest title companies in Louisiana.

In addition to our work in bankruptcy cases, Gordon Arata counsels clients on the risks and exposures they may face as a result of the application of the bankruptcy laws to their financial dealings and transactions. Where risks are identified, the firm assists clients in adopting and implementing appropriate strategies to minimize any exposures.

Attorneys practicing bankruptcy include David Messina, Steve Copley, Donna Currault, Scott O'Connor, Nick Graydon and Jennifer Conrad.

## CLASS ACTION PRACTICE

Gordon, Arata has considerable breadth and depth of experience in class action litigation. With the increased popularity of consumer class actions, we have been called upon to defend our clients in the tobacco, pharmaceutical, vitamin, securities, retail, oil and gas, insurance, public utility, and telecommunications industries as they have faced nationwide and statewide class action suits.

Our firm has for years represented Lorillard Tobacco Company in the attempt by the "Castano" plaintiffs in federal and state courts to certify a large class action of persons allegedly addicted to smoking through the tobacco companies' purported manipulation of nicotine levels and concealment of the addictive nature of cigarettes. Our firm has been responsible for handling depositions, hearings, motions, and all aspects of trial preparation.

We recently defended Charles Schwab & Co., Inc. in two class actions, filed in Louisiana, alleging that Schwab wrongfully failed to disclose to customers its receipt of order flow payments and also violated its duty of best execution. Every strategic decision had to consider the implications for parallel cases filed throughout the country by a consortium of plaintiffs' lawyers, for whom Louisiana ultimately became the favored forum. We worked with defense counsel in New York, Chicago and Washington, D.C. handling similar cases. Having litigated various issues through the Louisiana appellate system and on to the Louisiana Supreme Court ten times over the course of five years, our lawyers won a critical Louisiana appellate court decision holding that plaintiffs' claims were preempted by federal law. A

## CLASS ACTION PRACTICE

settlement of both class actions on favorable terms ensued.

The firm represented Lonza, Inc., one of many vitamin manufacturers sued in a *parens patriae* action filed by the State of Louisiana alleging an international price fixing conspiracy in the vitamin industry. During much of the pretrial phase, we have acted as liaison counsel with plaintiff's lawyers on behalf of all defendants. We coordinated strategy with national counsel for all of the vitamin manufacturers, who are also defending a multidistrict suit lodged in federal court in the District of Columbia.

We represented Kmart Corporation in defense of a putative national class action brought on behalf of fleet contract customers alleging breach of contract and fraud in connection with Kmart's former automotive services department. During the proceeding, we filed on behalf of Kmart a motion to strike the class allegations, which the state court judge granted. We then moved for summary judgment on behalf of Kmart and succeeded in having all of the plaintiffs' claims dismissed. We also secured an award of cost in favor of Kmart.

Our attorneys have represented Entergy Corporation, a major electric public utility, and its subsidiaries in numerous class action suits, several of which are pending currently. Many of these suits have been defended concurrently in courts and before the Louisiana Public Service Commission. We have provided the regulatory defense before the Commission, as well as the contractual and antitrust defenses in court. Several of these cases have been successfully litigated. Most recently, we secured a favorable settlement

## CLASS ACTION PRACTICE

of one such case for Entergy, obtained after gaining court approval in a contested fairness hearing.

Gordon, Arata is representing Cox Communications, Inc. in a consumer class action lawsuit contesting the propriety of Cox's late fee policies and procedures. The plaintiffs in that case allege that the late fees imposed on delinquent cable television subscribers under their cable subscription agreements constitute unlawful stipulated damages. The case has involved the extensive use of experts and included several rounds of mediation. Our lawyers have worked with Cox's national counsel in defending the case through depositions, document productions, hearings and pretrial preparation. Similar lawsuits have been filed against cable television companies across the country, and defense of the class action proceedings has required extensive coordination and strategy planning with national counsel and corporate counsel.

Attorneys in the firm's oil and gas practice group have extensive class action experience, including most recently the representation of Apache Corporation in multidistrict litigation involving a nationwide class action attacking crude oil pricing and marketing practices for alleged breach of contract and federal antitrust claims. Multiple settlements were reached and approved by the federal district court after a week-long fairness hearing. The district court's judgment approving the settlements are pending on appeal to the U.S. Fifth Circuit Court of Appeals. Other class actions have involved environmental remediation claims, natural gas pricing and measurement issues, royalty claims, and lease cancellation claims.

# CLASS ACTION PRACTICE

As the foregoing illustrates, Gordon, Arata routinely defends class actions on behalf of a diverse group of national, regional and local clients. These suits encompass a broad range of commercial and product related issues. Our defense of these actions, while cost efficient, is aggressive and effective.

Attorneys practicing class action litigation include Tim Eagan, Howard Sinor, Steve Copley, Martin Landrieu, Greg Grimsal, Donna Currault, Peck Hayne, Marcy Massengale, Ernest Svenson, Scott O'Connor, Tina Santopadre, Jennifer Conrad, Wendy Hickok Robinson and Deborah Malveaux.



GORDON
ARATA
McCOLLAM
DUPLANTIS
EAGAN LLP
ATTORNEYS AT LAW

| New Orleans | Lafayette | Baton Rouge |
|---|---|---|
| 504.582.1111 | 337.237.0132 | 225.381.9643 |

## CORPORATE AND SECURITIES LITIGATION

Our firm's corporate and securities litigation practice is quite broad and crosses all aspects of corporate law and the securities industry. For instance, representing the company, management, or the shareholders, we have been involved in contests for corporate control, which often include breach of fiduciary duty claims and other allegations of misconduct. In appropriate cases, we have obtained injunctive relief on behalf of shareholders to prevent corporate and financial institution defendants from holding unlawful meetings and taking improper actions against our clients.

We have also handled both individual and class action securities fraud claims, as counsel to issuers in some cases and as counsel to defrauded stockholders in others. In doing so, we have litigated issues that include Rule 10b-5, exchange registration requirements and state Blue Sky laws.

We have litigated a variety of customer disputes on behalf of national securities brokerage firms. In addition, we have also represented these firms in defense of class action claims alleging breach of fiduciary duty and failure to disclose material information in connection with taking customer orders to buy or sell stock, handling customer orders, and routing customer orders to appropriate market makers or exchanges for execution. We have handled arbitrations for national brokerage firms before the National Association of Securities Dealers and the New York Stock Exchange.

Our work is not confined to private litigation. Our lawyers have represented clients in investigations and other enforcement proceedings before the

## CORPORATE AND SECURITIES LITIGATION

Securities and Exchange Commission, the Office of the Comptroller of the Currency, the Federal Deposit Insurance Corporation, the Federal Reserve Board and other governmental agencies. These enforcement and agency proceedings have covered a number of issues including insider trading, unauthorized trading, the fiduciary duties of officers and directors and corporate control.

Attorneys practicing corporate and securities litigation are Tim Eagan, John McCollam, Steve Copley, Howard Sinor, Donna Currault, Scott O'Connor, Tina Santopadre and Peck Hayne.



GORDON
ARATA
McCOLLAM
DUPLANTIS
EAGAN
ATTORNEYS AT LAW

| New Orleans | Lafayette | Baton Rouge |
|---|---|---|
| 504.582.1111 | 337.237.0132 | 225.381.9643 |

# CORPORATE AND SECURITIES TRANSACTIONS

The firm's attorneys represent a wide array of clients – from emerging Internet issuers to public companies, from regional businesses to community banks and from entities with substantial overseas holdings to closely held partnerships, corporations and limited liability companies in virtually all aspects of their businesses. On each transaction, our attorneys bring to bear the depth and breadth of experience necessary to meet and creatively resolve the legal, regulatory and business challenges our clients face in today's capital and acquisition markets.

We represent companies in connection with a wide variety of capital markets and securities transactions, including private offerings and placements of both equity and debt securities, securitization of assets, venture capital financings, loan and credit facility financings, and offerings registered under federal and state securities laws. Our attorneys help clients comply with periodic disclosure obligations imposed by federal securities laws, establish internal compliance programs, formulate business and expansion plans, structure and document distribution arrangements, develop and evaluate franchise concepts and update corporate, partnership and other organizational documents regularly to keep pace with changes in law and business practices.

Our attorneys have:

- Structured, negotiated and closed mergers, stock purchase and sale transactions and asset purchase and sale transactions;

- Participated in tender offers, proxy contests and other contested acquisitions;

## CORPORATE AND SECURITIES TRANSACTIONS

- Advised clients on defensive strategies, including shareholder rights plans, in connection with hostile acquisition proposals;

- Represented clients before, and prepared applications, notices and other filings required by, the Federal Reserve Board, the Federal Deposit Insurance Corporation, the Office of Thrift Supervision and the Louisiana Office of Financial Institutions;

- Represented clients before, and prepared antitrust filings required by, the Federal Trade Commission and Department of Justice;

- Prepared boards of directors for regular and special shareholder meetings;

- Handled redemptions of preferred stock, stock splits and stock repurchase programs;

- Advised companies regarding stock liquidation issues and minority shareholder rights;

- Prepared proxy materials, private offering memoranda, and shareholder agreements for companies of all types;

- Handled bank holding company reorganizations and other corporate reorganizations and recapitalizations; and

- Rendered third party legal opinions in connection with stock and warrant issuances, mergers and acquisitions and other corporate and partnership matters.

In structuring and documenting transactions, our attorneys are sometimes called upon to advise clients organized under foreign law or that maintain significant international operations. We have been engaged by companies based or organized in Australia, Asia, Europe and Latin America in connection with acquisitions of assets and businesses in Louisiana and other parts of the United States and have represented American companies with current or prospective international operations or financings, including companies with substantial operations in the Peoples Republic of China.

We also advise many start-up and emerging businesses in such diverse matters as structural and organizational issues, capitalization and recapitalization, financing, acquisitions and sales, employment, intellectual property issues and many other matters.

Some of the recent transactions we have handled include:

- Representation of a communications company in connection with its issuance of $75 million in preferred stock;

- Representation of a state community bank in its reorganization as a Subchapter S corporation through a phantom bank merger transaction;

- Representation of the acquirers of a well-known New Orleans bakery chain;

- Representation of a public company in connection with the issuance of secured notes and warrants to purchase common stock; and

- Representation of the acquirer in connection with the purchase of a company holding licensed horse racing and gaming facilities.

Attorneys practicing in this area include Marion Weinstock, Teanna Neskora, Nick Graydon, Howard Sinor, Peck Hayne, Matt Randazzo, Josh Zelden and Cliff Rogillio.

# EMPLOYMENT LAW

The firm's attorneys have litigated and counseled clients concerning a broad range of employment issues arising out of the Employee Retirement Income Security Act (ERISA), the Family and Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), Title VII, the Age Discrimination in Employment Act (ADEA), and other federal and state laws affecting the employment relationship.

The firm regularly advises clients on retirement plans, executive severance agreements, and employee health, retirement, and insurance benefits. The firm's attorneys also counsel clients on drug testing, violence in the workplace, and other privacy issues, and have assisted clients in the formation and implementation of employee policy manuals.

Our employment lawyers have successfully handled litigation matters in the following areas:

- Age Discrimination
- Race Discrimination
- Sex Discrimination
- National Origin Discrimination
- Religious Discrimination
- Sexual Harassment
- Retaliatory Discharge
- Wrongful Termination
- ERISA
- ADA
- FMLA
- OSHA Investigations
- Federal Railroad Administration Investigations
- Investigations by the Department of Labor, Wage and Hour Division
- Invasion of Privacy

# EMPLOYMENT LAW

Attorneys practicing employment law include Tim Eagan, Donna Currault, Marcy Massengale, Howard Sinor, Tina Santopadre, Greg Grimsal, Teanna Neskora, Andrée Braud and Wendy Hickok Robinson.



| New Orleans | Lafayette | Baton Rouge |
|---|---|---|
| 504.582.1111 | 337.237.0132 | 225.381.9643 |

# ENERGY PRACTICE

From the Gulf of Mexico to the North Slope of Alaska to the Bass Straits of Australia, our energy practice is geographically broad and substantively expansive. It represents the bedrock of our firm, the foundation from which we built and diversified. Today, the firm's energy practice is stronger than ever.

Our energy practice encompasses all forms of dispute resolution, including litigation in state and federal courts at the trial and appellate levels, arbitration, mediation, and administrative proceedings before local, state and federal agencies such as the Federal Energy Regulatory Commission, the United States Minerals Management Service, the Louisiana State Mineral Board, the Louisiana Commissioner of Conservation and the Louisiana Public Service Commission. The firm's attorneys have successfully guided energy clients through bankruptcy proceedings and criminal proceedings.

We regularly handle disputes involving parties' contractual rights and obligations under mineral leases; onshore and offshore joint operating agreements; gas purchase contracts and gas balancing agreements; drilling contracts; seismic permits; pipeline construction, operation and transportation agreements; farmout agreements; unit and unit operating agreements; oil and gas processing agreements; rights-of-way; liens; mortgages; and rights-of-first refusal, to name a few. We also represent clients in property damage and personal injury claims arising from oil and gas operations, including well blowouts.

Our energy practice encompasses all varieties of energy transactions, including general corporate matters, mergers,

## ENERGY PRACTICE

acquisitions and divestitures, corporate reorganizations, securities law compliance, secured and unsecured lending, joint venture agreements, land and mineral title opinions, facilities licensing and permitting, lien workouts and the negotiation and drafting of all types of complex contracts used in the industry.

Our clients include major and independent oil and gas producers, pipeline companies, oilfield service companies and suppliers, financial institutions serving the oil and gas industry, onshore and offshore operators, and seismic companies.

Our energy practice lawyers have served as expert witnesses, arbitrators, mediators and special masters.  We are actively involved in industry groups such as the American and Houston Associations of Professional Landmen, the Petroleum Landmen's Association of New Orleans, the Lafayette Association of Petroleum Landmen, the Louisiana Mineral Law Institute, the Rocky Mountain Mineral Law Institute, the Southwestern Legal Foundation, the Federal Energy Bar Association, and the Energy Section of the American Bar Association.

Lawyers in the energy practice include Jack Gordon, Blake Arata, John McCollam, Bob Duplantis, Cynthia Nicholson, Bill Bailey, Sam Masur, Marion Weinstock, Scott O'Connor,  Peck Hayne, Matt Randazzo, Denis Swords, Greg Duplantis, Andrée Braud, Ferdie Laudumiey and Jonas Baker.



| New Orleans | Lafayette | Baton Rouge |
|---|---|---|
| 504.582.1111 | 337.237.0132 | 225.381.9643 |

# ENVIRONMENTAL LAW

As lands used in the mineral and other industries have aged and the nation's environmental concerns have increased, the firm has gathered a team of lawyers who devote a substantial portion of their practice to environmental matters. These attorneys have litigated and advised clients on a wide variety of issues arising out of various federal and state environmental laws, including regulations by the Environmental Protection Agency, the Louisiana Department of Environmental Quality and the Louisiana Department of Natural Resources.

The firm has successfully defended numerous clients in suits for environmental property damage or personal injury from exposure to toxic substances, including exposure from oil and gas or waste disposal operations. In connection with purchase and sale agreements and other arrangements common in the mineral and land-use industries, our environmental lawyers routinely draft, negotiate, and otherwise advise clients on complex contractual provisions on indemnity for environmental claims and on environmental site assessments.

Attorneys practicing environmental law include Bill Bailey, Sam Masur, Denis Swords, Scott O'Connor, Peck Hayne, Matt Randazzo, and Andrée Braud.

# HEALTHCARE LAW

Healthcare providers are currently operating in one of this country's most heavily regulated and rapidly changing industries. In response to the increase in both the demand for, and the cost of healthcare during the last decade, providers and their affiliated entities have witnessed a corresponding increase in regulatory scrutiny. Regulatory authorities, in recent years, have focused on issues as diverse as business arrangements between hospitals and physicians; quality of care issues in managed care and long-term care settings; and privacy of health information. Gordon Arata has the experience needed to assist our healthcare clients in navigating this increasingly complex and unique regulatory maze.

Our health law practice includes:

■ Assisting healthcare clients with transactional matters such as business financing, contracting, and business planning;

■ Conducting litigation involving Medicare/Medicaid payment issues at the administrative level and in state andfederal courts;

■ Handling licensure and certification matters before governmental and professional regulatory bodies;

■ Representing healthcare providers in their relations with hospitals, networks and managed care companies;

■ Structuring joint ventures and other business arrangements with emphasis on tax exemption and reimbursement issues as well as avoidance of fraud, abuse or fee splitting;

## HEALTHCARE LAW

- ■ Representing providers in mental health issues;

- ■ Defending and counseling healthcare providers facing civil and criminal investigations and enforcement actions alleging fraud and abuse;

- ■ Drafting, reviewing and revising medical staff and governing body by-laws;

- ■ Implementing compliance programs, conducting internal investigations and counseling on voluntary disclosure issues;

- ■ Advising hospitals on operational, liability and privacy issues; and

- ■ Defending and counseling medical staffs conducting peer review activities.

    Gordon Arata's healthcare lawyers have diverse experience. From the Emergency Department Nurse to the healthcare fraud coordinator in the U.S. Attorney's Office, all of our healthcare lawyers bring unique experience in counseling clients and conducting litigation in a wide range of complex healthcare issues.

    Other recent experience includes:

- ■ Handling initial hospital licensure for special hospitals;

- ■ Representation of physician leaders and medical staff in court challenge of peer review action; and

- ■ Defending healthcare companies and corporate officials under grand jury and OIG investigations into allegations of healthcare fraud and abuse.

## HEALTHCARE LAW

    Attorneys practicing in the health law area include Judy Giorlando, Marcy Massengale, Wendy Hickok Robinson, Donna Currault and Richard Westling.

# INSURANCE PRACTICE

Our firm provides advice and representation to insureds and insurers in a wide array of insurance related matters, including coverage questions, general casualty suits, directors' and officers' liability, products liability, professional malpractice, premises liability, environmental liability, employment practices liability, ERISA, workers' compensation and class action litigation. Owing to its distinguished oil and gas practice, the firm has considerable expertise in energy-related risks. The firm regularly counsels financial institutions on risk-related matters.

The firm is listed in Best's Directory of Recommended Attorneys and Adjusters.

Attorneys practicing in the insurance area include Tim Eagan, Steve Copley, Martin Landrieu, Greg Grimsal, and Matt Randazzo.

# INTELLECTUAL PROPERTY

Intellectual Property Law has undergone more changes in the last few years than at any other time in its history. The digitization of information and the advent of the Internet, with its attendant high-speed distribution of digital information, has created new challenges for those seeking to maintain control of their intellectual property. The impact is deeply felt in all areas of intellectual property law. Domain name disputes are stretching the bounds of trademark law, and business method patents are expanding the scope of patent law, giving rise to new disputes and serious legal questions. And, the business issues raised in the now-famous Napster controversy point out that the digital age will cause even bedrock copyright principles to be debated amongst a wider audience, even if courts continue to apply those principles without deviation.

The firm has handled a variety of intellectual property matters over the years and has positioned itself to handle the new challenges that arise in this fascinating field of law. We have handled patent disputes — fryers used in the fast-food industry and debris nets used in environmental clean-up of abandoned offshore platform and drilling sites. We have handled a variety of copyright issues based on music recordings and visual art works. The firm's attorneys have filed copyright applications and trademark applications and have litigated trademark and copyright disputes at the injunction phase, through trial and appeal.

Attorneys practicing in the intellectual property area include Tim Eagan, Steve Copley, Sam Masur, Ernest

## INTELLECTUAL PROPERTY

Svenson, Greg Grimsal, Donna Currault,
Denis Swords, Tina Santopadre and
Michael Lamers.



| New Orleans | Lafayette | Baton Rouge |
|---|---|---|
| 504.582.1111 | 337.237.0132 | 225.381.9643 |

# OIL AND GAS TRANSACTIONS AND REGULATORY PRACTICE

Founded in 1970 as an oil and gas firm, we have the resources and experience to provide our clients with the highest level of representation in every type of oil and gas transaction from the most novel and complex transactions, including specialized acquisitions and divestitures of properties, to ordinary matters such as drafting and reviewing mineral leases and farmout agreements. We regularly represent parties to oil and gas financing transactions, including both lenders and borrowers in conventional debt financings, mezzanine financings, equity offerings secured by oil and gas assets and production-based financings through the purchase of volumetric production payments.

Our representation of clients in such matters include:

- Negotiations and drafting of purchase and sale agreements, assignments and indemnity and related agreements covering properties located onshore and on the Outer Continental Shelf, direction of and participation in due diligence and related negotiation and preparation of curative documentation;

- Preparation, negotiation and review of credit agreements, loan agreements, mortgages, financing statements, security agreements and related documents and instruments;

- Preparation and negotiation of agreements with landowners for the leasing of their lands, the granting of surface and subsurface rights, the release from damages, and the unitization and/or pooling of their lands;

- Preparation and/or review of joint exploration and seismic survey agreements, operating agreements and related security instruments, farmout agreements, participation agreements,

OIL AND GAS TRANSACTIONS AND REGULATORY PRACTICE

drilling contracts, overriding royalty agreements and production payment agreements;

- Preparation of title opinions for both onshore properties and those located on the Outer Continental Shelf. Our library, accumulated over the past thirty years, contains title opinions covering many lands throughout Louisiana and numerous blocks on the Outer Continental Shelf;

- Rendering of third-party legal opinions in various types of matters;

- Preparation of and negotiation with landowners and various governmental agencies for permits, rights-of-way and servitude agreements as well as seismic permits; and

- Submission of bids and compliance with necessary procedures to secure leases and operating agreements from the State of Louisiana and other governmental agencies.

Our attorneys have extensive experience with leases covering the Outer Continental Shelf and pipelines and rights of way located thereon and the statutes and regulations government such matters. We regularly represent clients before the Minerals Management Service.

Additionally, we are actively involved with and regularly appear before the Louisiana Commissioner of Conservation, the Louisiana Public Service Commission, the Louisiana State Mineral Board and the Louisiana Department of Environmental Quality. Our attorneys have expertise in all State regulated matters and assist clients through each procedure or application. Our regulatory practice includes the counseling of clients in the regulatory considerations to be determined prior to the drilling of wells in Louisiana, the spacing and unitization decisions to be made, the timing of forced unitization and the strategy, filing and trial of such matters to conclusion, including subsequent follow-up to determine whether additional regulatory or drilling activity is necessary to solidify the client's acreage position in the competitive arena.

We offer title services that dove tail nicely to afford maximum assurance that the client's regulatory needs are being met. With some of our attorneys having both many years of experience and technical expertise in land, engineering and geology in-house for various companies and an everyday working relationship with the expert consultants in geology and engineering who regularly appear before the Commissioner, the firm is able to offer excellent counsel and representation to clients in this field.

Members of the firm have also served at various times on committees that assist the Commissioner of Conservation in drafting revised regulations for the Office of Conservation and have assisted in drafting new statutes on the use of seismic data in conservation hearings and the statutes governing the expanded unitization of deep wells. Also, several of our attorneys have spoken before numerous groups addressing issues involved in oil and gas transactions.

Attorneys practicing in the oil and gas transaction area include John McCollam, Bob Duplantis, Cynthia Nicholson, Bill Bailey, Sam Masur, Peck Hayne, Marion Weinstock, Matt Randazzo, Blake Arata, Denis Swords, Nick Graydon and Greg Duplantis.

# PRODUCTS LIABILITY

Our firm has represented manufacturers of many different products, including tobacco, pharmaceuticals, consumer goods, medical devices, and industrial equipment. We have worked on cases originating in both state and federal court, and through all levels of litigation, from trial to appeal. We have also helped clients to advance their interests through the legislative and regulatory processes. In the course of handling products liability cases our lawyers have become familiar with developing expert witnesses across a spectrum of disciplines, using automated litigation support systems, and other state of the art technological tools.

The attorneys in our firm who handle products liability cases are Tim Eagan, Steve Copley, Ernest Svenson, Sam Masur, Greg Grimsal, Donna Currault, Marcy Massengale, Tina Santopadre and Jennifer Conrad.

# PUBLIC UTILITIES LAW

The firm has an extensive practice in the area of public utilities law and regulation. The firm has regularly represented clients before: the Louisiana Public Service Commission on electric, telecommunications, and oil pipeline regulation; the Louisiana Office of Conservation on gas pipeline regulation; the Council for the City of New Orleans on electric regulation; the Federal Energy Regulatory Commission on electric, gas pipeline, and oil pipeline regulation.

For example, the firm has defended electric utilities in class-action claims of antitrust and rate-regulation violations and excessive fuel adjustment costs, has represented clients in disputes over arbitration agreements under the Telecommunications Act of 1996 and in obtaining rights of way for fiber optic cables. We have represented clients in connection with the financing, construction, and operation of electric generation facilities, and have represented both electric cooperatives and investor-owned utilities in acquisitions of one electric utility by another. The firm has represented both utilities and customers in utility rate proceedings and in proceedings for approval to commence or abandon utility service.

Attorneys practicing public utilities law include Tim Eagan, John McCollam, Martin Landrieu, Peck Hayne, Marcy Massengale, Michael Lamers, Wendy Hickok Robinson and Teanna Neskora.

# REAL ESTATE AND FINANCING

The firm's attorneys handle a wide array of real estate transactions and related matters. We represent public and private developers (including real estate investment trusts), shopping center and apartment complex owners, banks, commercial lessors and lessees and insurance companies in connection with such diverse matters as:

- Handling and closing purchases and sales of apartment complexes, warehouses, shopping centers, hospitals, plants and office buildings;

- Negotiating and preparing commercial leases for both landlords and tenants;

- Assisting clients with a wide range of zoning, permitting, and local licensing issues;

- Establishment of condominiums and resubdivisions;

- Advising both in and out-of-state lenders on title and survey matters; and

- Reviewing, drafting and negotiating construction agreements, development agreements, service contracts and related agreements.

Our attorneys also have regular and extensive experience representing lenders, borrowers, guarantors and other parties in substantial commercial financing transactions of virtually every kind, including construction loans, issuances of letters of credit in connection with public bond issuances and commercial loans secured by interests in real estate, equipment, inventory, accounts receivable, agricultural products, fiber-optic cables and related rights-of-ways, vessels, leasehold estates and many other kinds of collateral.

Our firm regularly provides the title services required in connection with the

## REAL ESTATE AND FINANCING

financing, acquisition and other transactions
we handle. Our firm's title insurance
agency, Current Title Agency, L.L.C., writes
title insurance for First American Title
Insurance Company and Lawyers Title
Insurance Corporation and regularly issues
large commercial title policies to both
owners and lenders. We have also
represented national title insurers in
connection with claims litigation and
represented the lead title insurer in
connection with the re-issuance of the title
policies on the New Orleans land-based
casino project.

We regularly negotitate and close
loan work-out transactions and successfully
pursue and defend complicated commercial
foreclosures.

Some of our recent transactions in
this area include:

- Representation of the purchasers in
connection with an acquisition of three
large apartment complexes for
approximately $19 million;

- Representation of a lender in a $9.1
million facility consisting of term loans,
lines of credit and letters of credit secured
by real estate, accounts receivable,
equipment and inventory;

- Representation of the seller in a
divestiture of two apartment complexes
for $12 million; and

- Representation of the purchaser in
connection with an acquisition of $30
million of manufacturing facilities and
the related financing transactions.

Attorneys handling matters in the
real estate and financing areas include
Marion Weinstock, Blake Arata, John
McCollam, Cynthia Nicholson, Howard

## REAL ESTATE AND FINANCING

Sinor, Martin Landrieu, Greg Grimsal,
Teanna Neskora, and Nick Craydon.

# TELECOMMUNICATIONS LAW

Rapid and comprehensive evolution of the telecommunications industry is underway as a result of explosive growth in computer and communications technology and sweeping regulatory changes. Members of the firm often represent service providers and consumers in a constantly changing legal environment.

Our lawyers routinely participate in rule-making proceedings before the Louisiana Public Service Commission and in contested matters before its Administrative Hearing Division. We have considerable experience representing telecommunications companies before the Federal Communications Commission and in federal court proceedings dealing with communications issues. We have assisted clients in obtaining and maintaining state and federal authorizations to offer regulated telecommunications services and have acted as communications counsel to businesses involved in transactions that affect their authorizations to offer those services.

Our lawyers have represented diverse communications companies offering cable television, wire line and wireless telephone services, broadcast radio and television, Internet services and fiber optic facilities and capacity. We have represented businesses in other industries that are significantly affected by developments in telecommunications technology and law.

Our lawyers have successfully handled matters in the following areas:

- Class Action Litigation
- Franchising
- Venture Capital Financing
- Capacity Use Agreements
- Fiber Optic Rights of Way

# TELECOMMUNICATIONS LAW

- Permitting
- Expropriation
- IRU Agreements
- Interconnection Agreements
- PSC Registration & Licensing
- Annual Reporting
- Billing Practices
- Re-Sale Contracts
- Non-Compete Contracts
- Employment Contracts
- Real Estate Leases
- Personal Property Tax

Attorneys practicing telecom-
munications law include Martin Landrieu,
Tim Eagan, Michael Lamers, Marcy
Massengale, Greg Grimsal, Teanna Neskora,
Tina Santopadre, Nick Graydon and Ferdie
Laudumiey.



GORDON
ARATA
McCOLLAM
DUPLANTIS
EAGAN
ATTORNEYS AT LAW

| New Orleans | Lafayette | Baton Rouge |
|---|---|---|
| 504.582.1111 | 337.237.0132 | 225.381.9643 |

# TRUSTS, ESTATES AND TAXATION

As an old proverb reminds us: the only things in life that are certain are death and taxes. What the old proverb does not reflect is that proper planning enables us to exercise some control over the timing and amount of taxes owed at death and otherwise.

The firm's trusts, estates and taxation attorneys counsel clients on estate planning strategies for the transmission of wealth and the avoidance and/or reduction of estate and income taxes. Through the use of wills, drafted with marital and credit shelter trusts, we have enabled clients to take full advantage of the available exemptions from federal estate tax and to defer the payment of estate taxes that may become due. We have employed a wide variety of devices to assist clients in estate and gift planning with the goal of reducing taxes and insuring the transfer of the client's assets to the desired person at the desired time:

- Family Limited Partnerships
- Life Insurance Trusts
- Personal Residence Trusts
- Generation Skipping Trusts
- Charitable Trusts
- Qualified Domestic Trusts
- Living Trusts

The attorneys in this section recognize that the goals of a well-developed estate plan include considerations other than the reduction of taxes. In this regard, we have assisted clients in developing long-range plans for special needs children, preparing for long-term disability, and planning for the transfer of a family business through ESOPs, buy/sell agreements and a

variety of deferred compensation arrangements. In addition, we have assisted clients in integrating their IRAs and qualified plans such as 401(k) plans into a comprehensive estate plan, have represented non-profit organizations in making applications to the IRS for recognition of nonpayment status, and have represented 401(k) plans in applying to the IRS for termination.

The attorneys in the trusts, estates and taxation section have also represented clients in contested probate, trust and other tax matters. For example, we have represented:

- The trustee of a trust in a challenge to the validity of the will which created the trust;

- The heirs of a succession against claims for reimbursement by a dissatisfied surviving spouse;

- The heir of a succession in prosecuting a claim for return of succession assets upon the termination of a usufruct;

- A spouse in a contested partition of community property upon divorce;

- Clients before the appellate division of the IRS; and

- Corporate clients in franchise tax and severance tax disputes with the Louisiana Department of Revenue.

An important part of the practice of the trusts, estates and tax attorneys is the probate of wills and the preparation of federal estate and gift tax returns, and Louisiana inheritance tax returns, and the firm's attorneys are skilled in doing so. Additionally, we have assisted numerous non-Louisiana clients with ancillary probate proceedings in Louisiana.

The attorneys in the trusts, estates and taxation section advise clients in matters of closely held corporations, choice of organizations, executive compensation and many other areas involving corporate, partnership or alternative organization forms. The firm has represented clients in seeking private letter rulings from the IRS. We also advise clients on the tax consequences of a proposed corporate transaction and we provide counsel in the areas of local tax and severance tax. Our attorneys handle a full array of tax disputes.

Attorneys practicing in the trusts, estates and taxation section include Cliff Rogillio, Teanna Neskora and Josh Zelden.

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2006, I caused a copy of the foregoing Affidavit of Jennifer L. Cihon to be served by electronic mail to counsel for defendants listed below:

Counsel for Defendant Cal Dive International, Inc.
Daniel L. Wellington  (D.C. Bar #273839)
Fulbright & Jaworski LLP
801 Pennsylvania Avenue, N.W.
Washington, D.C. 20004-2623
Tel: (202) 662-4574
Fax: (202) 662-4643

Counsel for Defendants Stolt Offshore S.A., Stolt Offshore, Inc.
and S&H Diving LLC
Paul C. Cuomo (D.C. Bar #457793)
Howrey LLP
1299 Pennsylvania Avenue, NW
Washington, D.C.  20004-2402
Tel: (202) 783-0800
Fax: (202) 383-6610

Jennifer L. Cihon (OH Bar #0068404)
Department of Justice
Antitrust Division
325 Seventh Street, N.W.
Suite 500
Washington, DC  20530
(202) 307-3278
(202) 616-2441 (Fax)