IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CASE NO. 1:05CV02041 |
|    Plaintiff | * | |
| | * | JUDGE: Emmet G. Sullivan |
| v. | * | |
| | * | DECK TYPE: Antitrust |
| CAL DIVE INTERNATIONAL, INC., | * | |
| STOLT OFFSHORE S.A., | * | FILED: July 25, 2006 |
| STOLT OFFSHORE, INC., and | * | |
| S&H DIVING, LLC, | * | |
|    Defendants | * | |
| * * * * * * * * * * * * * | | |

**TRUSTEE'S THIRD REPORT PURSUANT TO
FINAL JUDGMENT**

     NOW COMES Louis M. Phillips ("*Trustee*"), appointed pursuant to the Final Judgment entered January 12, 2006 (the "*Judgment*"), who submits the following third report, as of July 21, 2006, pursuant to subsection F. of Article V of the Judgment ("*Third Report*").

1.

     Trustee was appointed pursuant to an Order of this honorable Court entered on the docket of this proceeding as docket entry 15, on February 17, 2006. This Third Report, submitted pursuant to subsection F. of Article V of the Judgment is submitted as the report covering the period of time between May 17 and July 21, 2006.

2.

     As mentioned in Trustee's prior report, the M/V Seaway Defender was subject to an <u>Agreement of Purchase and Sale</u>, dated March 17, 2006, which agreement was amended by an <u>Amendment to Agreement to Purchase and Sale</u>, dated April 20, 2006 (collectively the agreement and amendment thereto are referred to as the "*Purchase Agreement*"). Though the prospective Acquirer secured dry dock availability for the purpose of conducting the dry dock inspection described within the Purchase Agreement, and reserved dry docking space commencing on May 22, 2006, to end on May 26, 2006, prospective Acquirer ran into further difficulties with the dry dock and a further extension was requested on May 24, 2006, seeking an extension of the dry dock inspection until June 9, 2006. However, on May 22, 2006, Trustee had received an expression of interest in the Seaway Defender from Superior Offshore, L.L.C., through Mr. Jim Mermis ("*Superior*"). After discussion with Cal Dive, Trustee notified prospective Acquirer of the expression of interest received from Superior, and that Trustee had determined it appropriate to solicit a bid for the Seaway Defender without the

1

necessity of dry dock inspection in the event the inspection deadline remained subject to the requested extension. As a result of negotiations with the prospective Acquirer, the requested extension of the inspection period was withdrawn, and the Closing Notification under the Purchase Agreement was provided to Trustee, in accordance therewith, on May 26, 2006.

3.

Trustee obtained written confirmation from the United States, through the Department of Justice, that the prospective Acquirer under the Purchase Agreement was an acceptable Acquirer under the Final Judgment, and obtained consent from the United States, through the Department of Justice, for Trustee to approve the assignment of the prospective Acquirer's rights under the Purchase Agreement to a proposed assignee. Written confirmation of the approval of the United States was provided to Cal Dive and counsel for the potential Acquirer and assignee, and on June 8, 2006, Trustee received written notification from the approved Acquirer that the sale had closed and that the sale proceeds could be disbursed. Sale proceeds, net of the agreed Trustee compensation, were disbursed by means of wire transfer on June 8, 2006, in accordance with wiring instructions provided to Trustee by Cal Dive. Notification of the closing of the sale and of the disbursement of sales proceeds was given by Trustee to counsel for the United States on June 8, 2006. Subsequently, the remaining balance of funds representing interest earned upon the earnest money deposit of $100,000, previously transmitted to Trustee by potential Acquirer and held in trust pending sale, was refunded by Trustee to the Acquirer.

4.

On June 20, 2006, Trustee received written communication from counsel for Acquirer that a dispute existed concerning whether certain equipment should have been made part of the sale. Until this communication Trustee had no knowledge of such dispute. Pre-sale discussions had taken place concerning the equipment in question, but because of the notification by Acquirer that the sale had closed and vessel accepted, Trustee had been of the opinion that the pre-sale discussions had resolved any questions concerning the equipment. Trustee was involved in numerous communications between Trustee and each party, and among Trustee and both parties during the period of time between June 20, 2006 and July 10, 2006, when Trustee was advised by Cal Dive that it had determined to transfer the equipment in question to Acquirer as part of the vessel covered by the Purchase Agreement and in connection with the sale of the Seaway Defender. On July 10, 2006, Trustee communicated this decision to counsel for Acquirer. Trustee has had no further communication from Acquirer concerning the equipment and assumes that the transfer has been accomplished.

5.

Trustee has been advised that Cal Dive has completed the cleanup of the M/V Midnight Carrier, the other vessel comprising the Saturation Diving Assets subject to the

Final Judgment. Trustee has communicated with a representative of Cross Services, Inc., which Trustee believes to be an affiliate of the Cross Group, Inc., 1950 South Van Ave., Houma, LA 70363 (collectively "*Cross*"). The Cross representative expressed interest to Trustee in purchasing the Midnight Carrier, and Trustee, on June 28, 2006, transmitted written information concerning the vessel and the Final Judgment. Trustee has received no further communication from Cross.

6.

Trustee has communicated with both the United States and Cal Dive regarding Trustee retaining a marketing agent for the Midnight Carrier, a vessel that is not fitted with a SAT system, and that according to Cal Dive has not been operated since the purchase of the vessel by Cal Dive. Neither the Untied States nor Cal Dive has expressed disagreement with Trustee contacting Marcon International, Inc. ("*Marcon*"), for the purpose of exploring retention of Marcon by Trustee as marketing agent for the Midnight Carrier. Trustee has also explored the possibility of packaging the Midnight Carrier with a SAT system from another source to make the vessel more marketable, though Trustee has not made sufficient progress to be able to provide details of such a prospect to the Court, Cal Dive or the United States.

7.

Trustee has maintained all written and e-mail communications concerning efforts to sell the Saturation Diving Assets, and all communications concerning agreements, amendments to agreements and extension of deadlines within agreements. Trustee has also maintained records of receipts and disbursements of earnest money, purchase price, compensation, and refunded interest earned upon earnest money.

8.

Prior to submission of this report, Trustee has provided it to the United States and Cal Dive for review.

Baton Rouge, Louisiana, this 25th day of July, 2006.

_____
Louis M. Phillips, Trustee