IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CASE NO. 1:05CV02041 |
|     Plaintiff | * | |
| | * | JUDGE: Emmet G. Sullivan |
| v. | * | |
| | * | DECK TYPE: Antitrust |
| CAL DIVE INTERNATIONAL, INC., | * | |
| STOLT OFFSHORE S.A., | * | FILED: August __, 2006 |
| STOLT OFFSHORE, INC., and | * | |
| S&H DIVING, LLC, | * | |
|     Defendants | * | |

**TRUSTEE'S FOURTH REPORT PURSUANT TO
FINAL JUDGMENT AND REPORT AND RECOMMENDATIONS PURSUANT
TO SUBSECTION G. OF ARTICLE V. OF FINAL JUDGMENT**

NOW COMES Louis M. Phillips ("*Trustee*"), appointed pursuant to the Final Judgment entered January 12, 2006 (the "*Judgment*" or "*Final Judgment*"), who submits the following fourth report, as of August 17, 2006, pursuant to subsection F. of Article V of the Judgment ("*Fourth Report*"), and also pursuant to subsection G. of Article V. of the Judgment.

1.

Trustee was appointed pursuant to an Order of this Honorable Court entered on the docket of this proceeding as docket entry 15, on February 17, 2006. This Fourth Report, submitted pursuant to subsection F. of Article V of the Judgment is submitted as the report covering the period of time between July 21, 2006 and August 17, 2006. Further, this report includes the information required by subsection G. of Article V. of the Final Judgment, along with the Trustee's recommendations regarding future actions to complete the divestiture required under the Final Judgment.

2.

As of the appointment of the Trustee, there were two remaining Saturation Diving Assets as defined in the Final Judgment subject to divestiture: the M/V Seaway Defender and the M/V Midnight Carrier. As of the appointment of the Trustee, the Seaway Defender was being operated by Cal Dive,[1] and the Midnight Carrier was not being operated. It was determined by the Trustee that the first order of business should be the

---

[1] Subsequent to the appointment of the Trustee, Cal Dive International, Inc. underwent a name change and is now known as Helix Energy Solutions Group, Inc. As the references in the Final Judgment are to Cal Dive, the Trustee within this report will refer to Helix Energy Solutions Group, Inc. as "Cal Dive."

1

divestiture of the Seaway Defender, as it was the vessel that could most immediately be placed into competitive service as a saturation diving support vessel.

3.

As mentioned in Trustee's Third Report, the M/V Seaway Defender was made subject to an <u>Agreement of Purchase and Sale</u>, dated March 17, 2006. In connection therewith, Trustee received an earnest money payment of $100,000 ("***Earnest Money***"), which the Trustee held in trust pursuant to the terms of the purchase agreement. Because of the lack of dry dock availability and other issues that arose after execution of the Purchase Agreement, the parties executed an <u>Amendment to Agreement to Purchase and Sale</u>, dated April 20, 2006 (collectively the agreement and amendment thereto are referred to as the "***Purchase Agreement***"). Though the prospective Acquirer secured dry dock availability for the purpose of conducting the dry dock inspection described within the Purchase Agreement, and reserved dry docking space commencing on May 22, 2006, to end on May 26, 2006, the prospective Acquirer ran into further difficulties with the dry dock and a further extension was requested on May 24, 2006, seeking an extension of the dry dock inspection until June 9, 2006. However, on May 22, 2006, Trustee received an expression of interest in the Seaway Defender from Superior Offshore, L.L.C., through Mr. Jim Mermis ("***Superior***").[2] After discussion with Cal Dive, Trustee notified prospective Acquirer of the expression of interest received from Superior, and that Trustee had determined it appropriate to solicit a bid for the Seaway Defender without the necessity of dry dock inspection in the event the inspection deadline remained subject to the requested extension. As a result of negotiations with the prospective Acquirer, the requested extension of the inspection period was withdrawn, and the Closing Notification under the Purchase Agreement was provided to Trustee, in accordance therewith, on May 26, 2006. There were extensive negotiations surrounding the amendment portion of the Purchase Agreement, the allocations of the various cost components related to moving the vessel to dry dock, and in connection with the expression of interest received by the Trustee while he was subject to the requested further extension.

4.

Between May 22, 2006 and June 8, 2006 the Trustee engaged in numerous communications with the parties concerning the sale of the Seaway Defender, and became involved in a pre sale dispute concerning whether certain equipment was to be included in the sale. The Trustee also arranged the wiring instructions for transmission of the purchase price and established the trust mechanism for retaining the sales proceeds in trust pending release authorization. Trustee believes that he provided services that were instrumental to obtaining the Closing Notification in accordance with the Purchase Agreement, and that his involvement assisted in effectuating the finalization of the closing without involvement of this Court.

---

[2] Subsequently Trustee received a written offer from Superior, but as the prospective Acquirer under the Purchase Agreement withdrew its request for a further extension of the deadlines and provided a Closing Notification in accordance with the Purchase Agreement, Trustee determined that he could not consider the offer.

5.

Pursuant to the notice requirements of the Final Judgment, the Trustee obtained written confirmation from the United States, through the Department of Justice, that the prospective Acquirer under the Purchase Agreement was an acceptable Acquirer under the Final Judgment, and obtained consent from the United States, through the Department of Justice, for Trustee to approve the assignment of the prospective Acquirer's rights under the Purchase Agreement to a proposed assignee. Written confirmation of the approval of the United States was provided to Cal Dive and counsel for the potential Acquirer and assignee, and on June 8, 2006, Trustee received written notification from the approved Acquirer that the sale had closed and that the sale proceeds could be disbursed. Sale proceeds, net of the agreed Trustee compensation, were disbursed to Cal Dive by means of wire transfer on June 8, 2006, in accordance with wiring instructions provided to Trustee by Cal Dive. Notification of the closing of the sale and of the disbursement of sales proceeds was given by Trustee to the United States through the Department of Justice on June 8, 2006. Subsequently, the remaining balance of funds representing interest earned upon the Earnest Money was refunded by Trustee to the Acquirer.

6.

On June 20, 2006, Trustee received written communication from counsel for Acquirer of the Seaway Defender that a dispute existed concerning whether certain equipment should have been made part of the sale. Until this communication Trustee had no knowledge that a dispute existed as of the time of the sale, as there had been no mention of a remaining dispute as of notification to the Trustee that the sale had closed and the vessel accepted. Pre-sale discussions had taken place concerning the equipment in question, but because of the notification by Acquirer that the sale had closed and vessel accepted, Trustee had been of the opinion that the pre-sale discussions had resolved any questions concerning the equipment. Trustee was involved in numerous communications between Trustee and each party, and among Trustee and both parties during the period of time between June 20, 2006 and July 10, 2006, when Trustee was advised by Cal Dive that it had determined to transfer the equipment in question to Acquirer as part of the vessel covered by the Purchase Agreement and in connection with the sale of the Seaway Defender. On July 10, 2006, Trustee communicated this decision to counsel for Acquirer. Subsequently, the Trustee received a copy of a letter from counsel for Acquirer to Cal Dive acknowledging that the equipment had been delivered and accepted by the Acquirer.

7.

As mentioned in prior reports, the M/V Midnight Carrier has not been operated by Cal Dive since the appointment of Trustee. This vessel is not outfitted as a SAT diving support vessel. Prior to the purchase of the Midnight Carrier by Cal Dive it had been modified for use as a SAT diving support vessel, but the vessel now does not include a SAT system, etc. Since the appointment of Trustee, Trustee has communicated with Cal Dive concerning the Midnight Carrier, and has determined (i) that according to Cal Dive

the vessel was in need of extensive clean up, which has been performed, (ii) that Cal Dive had no survey of the vessel, but was possessed of only a specifications sheet, (iii) that Cal Dive's internal inspection of the vessel revealed no mechanical problems that would preclude operation of the vessel, and (iv) that Cal Dive has secured no acceptable bids for the vessel. The Trustee has communicated with representatives of Superior about the vessel, and as well with Mr. Jack Bourgault of J.W. Bourgault and Associates, to whom he made an offer to provide information concerning the Midnight Carrier. The Trustee received no expressions of interest in the vessel or in receiving additional information concerning the vessel from these two sources. On or about June 28, 2006, the Trustee communicated with a representative of Cross Services, Inc., which Trustee believes to be an affiliate of the Cross Group, Inc., 1950 South Van Ave., Houma, LA 70363 (collectively "*Cross*"), concerning an expression of interest in the Midnight Carrier. Though the Trustee, on June 28, 2006, transmitted written information concerning the vessel and the Final Judgment, Trustee has received no further communication from Cross. In conversations with the Cross representative, the Trustee was advised that Cross was interested in the vessel for use within its offshore construction business operations. The Trustee has concluded that upon analysis of the requirements set forth within subsection G. of Article IV. of the Final Judgment, Cross determined that it was not interested in pursuing the possibility of purchasing the vessel.

8.

Trustee has communicated with both the United States and Cal Dive regarding Trustee retaining a marketing agent for the Midnight Carrier. Neither the United States nor Cal Dive expressed disagreement with Trustee contacting Marcon International, Inc. ("*Marcon*"), for the purpose of exploring retention of Marcon by Trustee as marketing agent for the Midnight Carrier. The Trustee has engaged in extensive discussions with Mr. Jeff Hugret, a Marcon representative, who has expressed concern regarding the limited market for the Midnight Carrier (given that it is not presently outfitted as a SAT diving support vessel), and has had to answer numerous questions concerning the scope of the Final Judgment and the constraints imposed by the Final Judgment upon a marketing agent. Trustee has also explored the possibility of packaging the Midnight Carrier with a SAT system from another source to make the vessel more marketable, though Trustee has not made sufficient progress to be able to provide details of such a prospect to the Court, Cal Dive or the United States. In fact, it appears that packaging the vessel with a SAT system from another entity is not going to come to fruition. Notwithstanding concerns about the limited market for the vessel, Trustee, on August 11, 2006, received a proposal from Marcon setting forth an exclusive listing/brokerage agreement. On august 14, 2006, Trustee transmitted the proposed agreement to the United states through the Department of Justice. Due to the shortness of time between August 14, 2006 and the expiration of Trustee's term (August 17, 2006), Trustee has not received a response from the United States concerning the proposed brokerage agreement.

4

9.

On August 17, 2006, Trustee received a message from Marcon, wherein the Marcon representative requests that Trustee facilitate an inspection of the Midnight Carrier by Marcon and a prospective purchaser during the week of August 21, 2006. This message has been transmitted to the United States through the Department of Justice.

10.

Trustee avers that the initial focus on the sale of the Seaway Defender was the appropriate means of proceeding. However, the focus upon the Seaway Defender, along with the problems effectuating the closing of that sale and the post-sale dispute concerning the equipment, in combination with the limited market for the Midnight Carrier (and the concomitant concerns of the potential broker), have created the situation that the Midnight Carrier has not been sold within six (6) months after appointment of the Trustee.

11.

While Trustee cannot opine as to the fitness of any potential Acquirer of the Midnight Carrier, the fact that Marcon has agreed to be party to a listing agreement (albeit an exclusive agreement) in spite of concerns as to the limited market for the vessel, and the fact that Marcon has requested that Trustee facilitate an inspection during the week of August 21, 2006, gives Trustee reason to believe that the most appropriate course of action would be to extend the trusteeship for a period of ninety (90) days, for purposes (i) of having Trustee execute the exclusive listing agreement (of an agreement of similar nature), (ii) of having Trustee facilitate the requested inspection, and (iii) of having Trustee effectuate the sale of the Midnight Carrier during the extended term if possible. The proposed broker has requested that Trustee attempt to effectuate modification of the Final Judgment to expand the potential market for the vessel. However, Trustee believes and has advised that he is in no position to make such a request of the parties to this proceeding. Trustee only mentions the potential broker's concerns so that the parties hereto can be aware that such concerns have been voiced.

12.

Trustee has maintained, he believes, a good working relationship with representatives of Cal Dive, and with the Department of Justice, and has seen no reason to bring any matter before the Court for resolution.

13.

Trustee has maintained all written and e-mail communications concerning efforts to sell the Saturation Diving Assets, and all communications concerning agreements, amendments to agreements and extension of deadlines within agreements. Trustee has

also maintained records of receipts and disbursements of Earnest Money, purchase price, compensation, and refunded interest earned upon Earnest Money.

13.

Prior to submission of this report, Trustee has provided it to the United States and Cal Dive for review.

Baton Rouge, Louisiana, this 18th day of August, 2006.

_____
Louis M. Phillips, Trustee