IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>    Plaintiff | * | CASE NO. 1:05CV02041 |
| | * | |
| | * | JUDGE: Emmet G. Sullivan |
| v. | * | |
| | * | DECK TYPE: Antitrust |
| CAL DIVE INTERNATIONAL, INC., | * | |
| STOLT OFFSHORE S.A., | * | FILED: January __, 2007 |
| STOLT OFFSHORE, INC., and | * | |
| S&H DIVING, LLC, | * | |
|     Defendants | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**TRUSTEE'S SIXTH REPORT PURSUANT TO
FINAL JUDGMENT AND REPORT AND RECOMMENDATIONS PURSUANT
TO SUBSECTION G. OF ARTICLE V. OF FINAL JUDGMENT**

NOW COMES Louis M. Phillips ("*Trustee*"), appointed pursuant to the Final Judgment entered January 12, 2006 (the "*Judgment*" or "*Final Judgment*"), which appointment was extended by Order of this Court entered on October 11, 2006 (the "*October Order*"), who submits the following report, as of January 9, 2006[1], pursuant to subsection F. of Article V of the Judgment ("*Sixth Report*"), and also pursuant to subsection G. of Article V. of the Judgment.

1.

Trustee was appointed pursuant to an Order of this Honorable Court entered on the docket of this proceeding as docket entry 15, on February 17, 2006. This Sixth Report, submitted pursuant to subsection F. of Article V of the Judgment is submitted as the report covering the period of time between October 11, 2006 and January 9, 2006, unless earlier communications are referenced for completeness. Further, this report includes the information required by subsection G. of Article V. of the Final Judgment.

2.

As of the appointment of the Trustee, there were two remaining Saturation Diving Assets as defined in the Final Judgment subject to divestiture: the M/V Seaway Defender and the M/V Midnight Carrier. As of this Sixth Report, the Seaway Defender has been sold, and the Trustee believes that issues surviving the sale referenced in prior reports have been resolved (pending entry of the October Order the Trustee, though awaiting a decision upon the request of the United States to extend the trusteeship, acted as best he

---

[1] The Trustee recognizes that the time period covered by this report is longer than provided for under the Judgment. The trustee has been involved in extensive negotiations with multiple parties, and on December 14 was involved in a car accident which caused some injury.

1

could to facilitate a consensual resolution of issues concerning dive helmets, which, due to the Trustee having received no information to the contrary, the Trustee believes has occurred). The balance of this Sixth Report will deal with the vessel Midnight Carrier.

3.

As mentioned in prior reports, the M/V Midnight Carrier has not been operated by Cal Dive since the appointment of Trustee. This vessel is not outfitted as a SAT diving support vessel. Prior to the purchase of the Midnight Carrier by Cal Dive it had been modified for use as a SAT diving support vessel, but the vessel now does not include a SAT system, etc. Since the appointment of Trustee, Trustee has communicated with Cal Dive concerning the Midnight Carrier, and has determined (i) that according to Cal Dive the vessel was in need of extensive clean up, which has been performed, (ii) that Cal Dive had no survey of the vessel, but was possessed of only a specifications sheet, (iii) that Cal Dive's internal inspection of the vessel revealed no mechanical problems that would preclude operation of the vessel, and (iv) that Cal Dive has secured no acceptable bids for the vessel.

4.

Prior to October 11, 2006, the Trustee communicated with representatives of Superior Offshore, L.L.C. about the vessel, and as well with Mr. Jack Bourgault of J.W. Bourgault and Associates, to whom he made an offer to provide information concerning the vessel. The Trustee received no expressions of interest in the vessel or in receiving additional information concerning the vessel from these two sources. On or about June 28, 2006, the Trustee communicated with a representative of Cross Services, Inc., which Trustee believes to be an affiliate of the Cross Group, Inc., 1950 South Van Ave., Houma, LA 70363 (collectively "*Cross*"), concerning an expression of interest in the Midnight Carrier. Though the Trustee, on June 28, 2006, transmitted written information concerning the vessel and the Final Judgment, Trustee has received no further communication from Cross. In conversations with the Cross representative, the Trustee was advised that Cross was interested in the vessel for use within its offshore construction business operations. The Trustee has concluded that upon analysis of the requirements set forth within subsection G. of Article IV. of the Final Judgment, Cross determined that it was not interested in pursuing the possibility of purchasing the vessel.

5.

Trustee has communicated with both the United States and Cal Dive regarding Trustee retaining a marketing agent for the Midnight Carrier. Neither the United States nor Cal Dive expressed disagreement with Trustee contacting Marcon International, Inc. ("*Marcon*"), for the purpose of exploring retention of Marcon by Trustee as marketing agent for the Midnight Carrier. The Trustee engaged in extensive discussions with Mr. Jeff Hugret, a Marcon representative, who expressed concern regarding the limited market for the Midnight Carrier (given that it is not presently outfitted as a SAT diving support vessel), and had to answer numerous questions concerning the scope of the Final

2

Judgment and the constraints imposed by the Final Judgment upon a marketing agent. Trustee has also explored the possibility of packaging the Midnight Carrier with a SAT system from another source to make the vessel more marketable, though Trustee has not made sufficient progress to be able to provide details of such a prospect to the Court, Cal Dive or the United States. In fact, it appears that packaging the vessel with a SAT system from another entity is not going to come to fruition. Notwithstanding concerns about the limited market for the vessel, Trustee, on August 11, 2006, received a proposal from Marcon setting forth an exclusive listing/brokerage agreement. On August 14, 2006, Trustee transmitted the proposed agreement to the United States through the Department of Justice.

6.

Between the expiration of the Trustee's initial term (August 17, 2006) and the October Order, the Trustee communicated with entities regarding the prospect of sale of the Midnight Carrier. Given the possible absence of standing, the Trustee determined to wait for the October Order before engaging in further negotiations. Subsequent to entry of the October Order, the Trustee has engaged in communications concerning sale of the Midnight Carrier. The parties with whom the Trustee has had contact regarding the M/V Midnight Carrier after the October Order, and the nature of the contracts are set forth as follows:

a. Indepth Offshore Technologies International, 18836 Ferncrost Ct., Baton Rouge, LA 70809. The representative with whom the Trustee has communicated is Hesham El Abrikgy. The trustee has communicated with Mr. Abrikgy, who has requested digital photographs of the vessel as a first step before setting up a personal inspection. The Trustee has communicated this request to the office of the general counsel of Cal Dive, and also to Mr. Stephen Bellingham, related to the Trustee to be the contact representative charged with the responsibility of setting up inspections of the vessel. The Trustee transmitted the photographs as requested and made arrangements to have the Vessel inspected by Indepth Technologies.

b. Maritime Capital Solutions, 5177 Richmond Avenue, Suite 1142, Houston, TX 77056. The representative with whom the Trustee has communicated is Mr. David Weinhoffer. The Trustee provided Mr. Weinhoffer with Mr. Bellingham's contact information and Mr. Weinhoffer performed an inspection of the vessel.

c. Triton Diving Services, 101 Herman Dr., Belle chase, LA 70037. The person with whom the trustee has attempted to communicate, by leaving voice messages is Mr. Chuck Stahl. Mr. Stahl has contacted persons at Cal Dive concerning the vessel and the Trustee has attempted to make contact, to no avail as of the submission of this Sixth Report.

d. Sea Crusader LLC, 26 N. Meadowmist Circle, The Woodlands, Texas 77381. The person with whom the trustee has communicated is Mr. Freddie Fredricksen, President. He initially advised that he represented three potential purchasers:

      The Cross Group
      Houma, Louisiana

      Tetra Technologies
      The Woodlands, Texas

      Con-Dive
      Houston, Texas

Since the October Report the Trustee has received notification that Sea Crusader is acting as a broker for a fourth entity, Offshore Energy Holding, Inc. Sea Crusader and/or representative(s) of Offshore Energy Holdings, Inc., have inspected the vessel.

e.    Marcon International, Inc., P.O. Box 1170, 9 NW Front Street, Coupeville, WA 98239. The person with whom the trustee has communicated is Mr. Jeff Hugret. The Trustee has communicated a request that Marcon consider a non-exclusive listing agreement, given the other communications that the Trustee has received. The trustee has received no response from Mr. Hugret or any other representative of Marcon, and assumes that Marcon is not interested in a non-exclusive marketing arrangement.

7.

The Trustee has received written offers to purchase from (i) Maritime Capital Solutions on behalf of C-Mar Group, (ii) Indepth Technologies, and (iii) Sea Crusader on behalf of Offshore Holding, Inc. All offers have been transmitted to counsel for the United States and to Cal Dive for review. The Trustee executed a purchase and sale agreement with Offshore Holding, Inc. on January 8, 2007, and on January 9, 2007 received a representation/notice that the Earnest Money required by the purchase and sale agreement had been wired in accordance therewith. The Closing Deadline set forth within the purchase and sale agreement is fourteen (14) days after execution of the purchase and sale agreement, or January 22, 2007. The term of the Trustee expires on January 9, 2007, and given that the Trustee's firm is escrow agent under the purchase and sale agreement, the trustee recommends that the term of the Trustee be extended for a period of 45 days within which the transaction will have had time to close. From the Trustee's perspective the only matter left to be accomplished is for the Trustee to obtain written approval from the United States of the Purchaser under the purchase and sale agreement as an Acquirer of the Vessel. Also, the Trustee suggests that continuation of the term of the Trustee will facilitate the resolution of any post closing matters that may arise.

8.

Trustee has maintained all written and e-mail communications concerning efforts to sell the Saturation Diving Assets.

9.

Prior to submission of this report, Trustee has provided it to the United States and Cal Dive for review.

Baton Rouge, Louisiana, this 9th day of January, 2007.

_____
Louis M. Phillips, Trustee